# EXHIBIT B

CAUSE NO. 2008-64385

| | | |
|---|---|---|
| PAUL MCKIM, Individually and Derivatively on behalf of Nominal Defendants Deep Marine Holdings, Inc., and Deep Marine Technology, Incorporated | § § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | |
| NASSER KAZEMINY; OTTO CANDIES, JR.; JOHN HUDGENS; DCC VENTURES, LLC; OTTO CANDIES, LLC; NJK HOLDING CORPORATION; OTTO CANDIES, III; JOHN ELLINGBOE; DANIEL ERICKSON; LARRY LENING, JR.; BRUCE C. GILMAN;EUGENE DEPALMA; and WADE ADABIE, JR. | § § § § § § § § § § § | |
| Defendants, and | § § § | HARRIS COUNTY, TEXAS |
| DEEP MARINE HOLDINGS, INC. and DEEP MARINE TECHNOLOGIES, INCORPORATED, | § § § § | |
| Nominal Defendants. | § § | 129th JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff, Paul McKim ("McKim"), submits this First Amended Petition against Defendants Nasser Kazeminy; Otto Candies, Jr.; John Hudgens; DCC Ventures, LLC; Otto Candies, LLC; NJK Holding Corporation; Otto Candies, III; John Ellingboe; Daniel Erickson; Larry Lening; Jr.; Bruce C. Gilman; Eugene DePalma; and Wade Abadie, Jr. (collectively

RECEIVED

JUN 1 5 2009

David M. Aafedt

H-785451_1.DOC

"Defendants") and Nominal Defendants Deep Marine Holdings, Inc., and Deep Marine Technology, Incorporated.

## NATURE OF THE ACTION

The issues now before the court arise at the intersection of four principles of American law and society. The first principle is that where corporate governance is concerned, three of the most vital elements are honesty, trust and accountability. The second principle, a corollary of the first, is that the fiduciary duties of those in charge of corporate governance cannot be delegated or disregarded without consequence. The third principle, and one that is a hallmark in the laws of every state throughout the nation, is that employees in a corporation should never be forced or coerced into committing acts that are illegal, oppressive or fraudulent. The fourth principle, while perhaps not the stuff of statutes, is the aphorism "might makes right," which reflects society's view that right and wrong are often determined by power and money.

From Abscam to Adelphia, for many years American principles of corporate governance have been disregarded in the name of "might makes right." And from Pete Williams to David Durenberger, political alchemy involving business, power and money has proven not to be so rare. But rare is the occasion when a person, such as Sherron Watkins at Enron, stands up against oppression and wrongdoing. Where Deep Marine Holdings, Inc. ("DMH") and Deep Marine Technologies, Incorporated ("DMT") are concerned, Paul McKim is that person. Mr. McKim has consistently stood up against the wrongful acts of those in control of DMH and DMT when they acted in a manner that was illegal, oppressive or fraudulent, and resulted in the corporate assets of DMH and DMT being misapplied or wasted.

This lawsuit is in response to and defense of claims first made against DMH, DMT, Mr. McKim and certain of the Defendants, pursuant to a written demand for monetary or non-

H-785451_1.DOC

monetary relief made by some shareholders of DMH and former shareholders of DMT on or about October 10, 2008 (the "Claims"). The Claims were made against Mr. McKim and others in their capacities as employees, directors and officers of DMH and DMT. Since the date of the Claims, Mr. McKim has been engaged in an investigation of the Claims, and has taken no action or failed to take any required action that would prejudice the rights of DMH, DMT or himself with respect to the Claims. This lawsuit is also a shareholder's derivative action brought in defense of the Claims and for the benefit of nominal defendants DMH and DMT. This lawsuit is also an individual suit by Paul McKim in defense of the Claims against certain members of the DMH's and DMT's Board of Directors, executive officers, and controlling shareholders. This lawsuit is also an individual suit by Paul McKim prosecuting wrongs against him as an former officer, board member, and current shareholder of DMH and DMT. It seeks to remedy Defendants' breaches of fiduciary duties, fraud, unjust enrichment, conspiracy, knowing interference with fiduciary duties, aiding and abetting breaches of fiduciary duties, neglect, errors, misstatements, misleading statements, omissions, wrongful discharge, tortious interference and other acts in violation of laws dealing with the operation and governance of DMH and its wholly owned subsidiary, DMT.

## DISCOVERY

Plaintiff requests that discovery be conducted pursuant to Texas Rule of Civil Procedure 190.4—Level 3.

## PARTIES

Plaintiff, Paul McKim ("Plaintiff"), a Texas resident, was at all relevant times a shareholder, and formerly held the positions of Chief Executive Officer, and Director of Nominal Defendants DMH and DMT.

H-785451_1.DOC

Nominal defendant Deep Marine Holdings, Inc., a Delaware corporation with its principal executive offices located in Houston, Texas, may be served with process through its registered agent at The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Nominal defendant Deep Marine Technologies, Inc., a Texas corporation with its principal executive offices located in Houston, Texas, may be served with process through its registered agent, John Hudgens, at 20411 Imperial Valley Dr., Houston, Texas 77086.

Defendant Nasser Kazeminy ("Kazeminy") is a current shareholder of DMH, directly and indirectly, and a former shareholder of DMT, directly and indirectly. Kazeminy is a resident of Minnesota, and may be served with process at NJK Holding Corporation, 7803 Glenroy Rd., #300, Bloomington, MN 55439.

DCC Ventures, LLC ("DCC"), a Nevada limited liability company, is a current shareholder of DMH and former shareholder of DMT. DCC has its principal executive offices in Minneapolis, Minnesota. On October 1, 2008, DCC went into default status with the Secretary of State of Nevada, and as such is not in good standing as of the date this lawsuit is filed, and has forfeited its charter in the State of Nevada. At the time of default and forfeiture of its charter, DCC's registered agent was listed as The Corporation Trust Company of Nevada, 6100 Neil Road, Suite 500, Reno, Nevada, 89511, and its officers were listed as Michael T. Davies and Mohannad Gharib, at 3960 Howard Hughes Parkway, 5th Floor, Las Vegas, Nevada 89101. DCC is controlled by Kazeminy. DCC may be served with process through Kazeminy or the registered agent or officers listed as of the date of its default and forfeiture of its charter in the State of Nevada.

H-785451_1.DOC

NJK Holding Corporation ("NJK"), a Minnesota corporation, is controlled by Kazeminy. NJK has its principal executive offices in Minneapolis, Minnesota. Although registered with the Minnesota Secretary of State, there is no registered agent listed for NJK. However, the registered address for NJK in the State of Minnesota is 8500 Normandale Lake Blvd., #600, Minneapolis, Minnesota 55437. NJK may be served with process through Kazeminy at the above registered address.

Otto Candies, LLC ("Otto") is a current shareholder of DMH and a former shareholder of DMT. Defendant Otto is a Louisiana limited liability company with its principal executive offices at 17271 Hwy. 90, Des Allemands, LA 70030. DCC may be served with process through its registered agent Paul B. Candies, 17271 Hwy. 90, Des Allemands, LA 70030.

Otto B. Candies, Jr. ("Candies") is Chairman of the Board and Chief Executive Officer of Defendant Otto Candies, LLC. Candies directly participated in the wrongful conduct alleged herein. Candies is a resident of Louisiana, and may be served with process at Otto Candies, LLC., 17271 Hwy. 90, Des Allemands, LA 70030.

Otto B. Candies, III ("Candies III") is Secretary of Defendant Otto Candies, LLC. Candies directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and DMT. Candies III is a resident of Louisiana, and may be served with process at Otto Candies, LLC., 17271 Hwy. 90, Des Allemands, LA 70030.

John Hudgens is the chief financial officer of DMH and/or DMT. Hudgens directly participated in the wrongful conduct alleged herein. Hudgens is a resident of Minnesota and may be served with process at the office of his employer, Deep Marine Technology, Inc., 20411

H-785451_1.DOC

Imperial Valley Dr., Houston, Texas 77089, or at the office of NJK Holding Corporation, 7803 Glenroy Rd., #300, Bloomington, MN 55439, which is his current or former employer.

Defendant Larry Lenig, Jr. ("Lenig") is a current member of the Board of Directors of DMH and DMT. Lenig directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and DMT. Lenig is a resident of Florida and may be served with process at his employer, ComVest, at One Clematis Street, Suite 300, West Palm Beach, Florida 33401.

Defendant John Ellingboe ("Ellingboe") is a former member of the Board of Directors of DMH and DMT. Ellingboe directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and DMT. Ellingboe is a resident of Minnesota and may be served with process at 7123 Tupa Dr., Minneapolis, MN 55439, or at the office of NJK Holding Corporation, 7803 Glenroy Rd., #300, Bloomington, MN 55439, which is his current or former employer.

Defendant Daniel Erickson ("Erickson") is a former member of the Board of Directors of DMH and DMT. Erickson directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and DMT. Erickson is a resident of Minnesota and may be served with process at Deep Marine Technology, Inc., 20411 Imperial Valley Dr., Houston, Texas 77089, or at the office of NJK Holding Corporation, 7803 Glenroy Rd., #300, Bloomington, MN 55439, which is his current or former employer.

Defendant Bruce C. Gilman ("Gilman") is a member of the Board of Directors and an employee of DMH and/or DMT. Gilman directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and

H-785451_1.DOC

DMT. Gilman is a resident of Texas and may be served with process at 514 Rancho Bauer Drive, Houston, Texas 77079.

Defendant Eugene DePalma ("DePalma") is a former member of the Board of Directors of DMH and DMT. DePalma directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and DMT. DePalma is a resident of Minnesota and may be served with process at the office of Deep Marine Technology, Inc., 20411 Imperial Valley Dr., Houston, Texas 77089 or at the office of NJK Holding Corporation, 7803 Glenroy Rd., #300, Bloomington, MN 55439, which is his current or former employer.

Defendant Wade Abadie, Jr. ("Abadie") is a former member of the Board of Directors of DMH and DMT. Abadie directly participated in the wrongful conduct alleged herein by and through his involvement as a member of the Board of Directors of DMH and DMT. Abadie is a resident of Texas and may be served with process at the office of Deep Marine Technology, Inc., 20411 Imperial Valley Dr., Houston, Texas 77089, which is his current employer.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter because the amount in controversy is within the jurisdictional limits of this Court and the Defendants are subject to the laws of the State of Texas and subject to the service of process.

Venue is proper in this Court under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas.

H-785451_1.DOC

## BACKGROUND

Founded and incorporated in 2001 by Plaintiff Paul McKim, DMT provides comprehensive subsea services to the offshore oil and gas industry. Since its inception and until recently, Mr. McKim served as a Director and Chief Executive Officer for DMT. As DMT began to expand, Mr. McKim sought additional outside capital support to help grow the company. A number of entities were approached and bought shares in DMT. One of these individuals was Nasser Kazeminy. The other was Otto Candies, Jr. Kazeminy, along with his co-Defendants, disregarded the best interests of DMH and DMT and utilized the companies and their assets as their own personal bank account.

### a.   *Nasser Kazeminy*

Kazeminy, an Iranian businessman who has lived in the United States for 35 years, is the principal owner and controlling shareholder of NJK Holding Corporation ("NJK"), a Minnesota based investment company. Kazeminy also owns DCC Ventures, LLC, a privately-held investment company located in Minneapolis, Minnesota. DCC is a controlling shareholder of DMH, and formerly a controlling shareholder of DMT. In 2004, DCC Ventures invested approximately $1,000,000.00 in DMT and subsequently increased its ownership to over ten million shares making it the largest single shareholder. In addition, Kazeminy personally purchased over 500,000 shares in DMT. Over time, Kazeminy exerted increasing control over the Board of Directors and day-to-day operations of DMT. Kazeminy, as a controlling shareholder, treated DMT as "his company" and dealt swiftly and harshly with dissenting board members and executive management.

In June 2006, Kazeminy solidified his strong hold on DMT by forcing DMT into an Oversight Services Agreement (the "OSA")[1]. The OSA between DMT and NJK, granted Kazeminy, by and through his control of NJK, the putative power to—at his own discretion—designate advisory, consulting and other services in relation to the day-to-day operations of DMT. Under the auspices of the OSA and his position as a controlling shareholder, Kazeminy unilaterally and without authority filled the Board of Directors and senior management with his own hand-picked individuals—many of whom previously worked directly with or for NJK—despite the fact that the OSA did not delegate any duties of the Board of Directors to NJK or Kazeminy. Moreover, nothing in the OSA gave NJK or Kazeminy the rights afforded the directors or shareholders of DMT, nor did such OSA operate as a valid proxy, voting trust or voting agreement.

### b.   *Otto Candies, Jr.*

Otto Candies, Jr. ("Candies") serves as Chairman and Chief Executive Officer of Otto Candies, LLC ("Otto"), a Louisiana offshore oil company with more than 100 vessels and interests in the Gulf of Mexico, Mexico and Central and South America. DMT had dealings with Otto going back to 2004—most of which were troubled—but Otto did not receive shares in DMT until 2005 when an interest in DMT was given in exchange for the MV Diamond. With that, Otto had a foothold in DMT and a connection to Kazeminy that only grew over time. In November 2007, Candies and Kazeminy struck a deal among themselves that resulted in Otto Candies, LLC receiving an almost twenty percent interest in DMT in exchange for two vessels, the MV Agnes and Kelly Ann. With over nine million shares in DMH, Otto Candies, LLC has only a slightly smaller shareholder interest than DCC Ventures and Kazeminy, combined.

---

[1]      After the formation of DMH, a new Oversight Services Agreement was entered into on May 31, 2008 between DMH and NJK (the "DMH Oversight Agreement").

c.      *Deep Marine Holdings, Inc. Restructuring*

DMT continued to operate as an independent corporate entity until May 2007 when the company underwent a restructuring.  Deep Marine Holdings, Inc., a Delaware corporation, was created and became the sole owner of all outstanding stock of DMT in an exchange transaction. All assets and operations remain under DMT and four other subsidiaries.  DMH and DMT until recently shared the same current Board of Directors—McKim, Lenig, and Gilman.  Mr. McKim no longer sits on the Board of Directors.  DMH has no independent operations or assets separate and aside from those contained within DMT.

The two controlling shareholders—Kazeminy and Candies—with the assistance of Co-Defendants, have continued to disregard the best interests of DMH and DMT after the restructuring, and utilize the businesses as their own personal bank account.  The wrongful activities range from dishonest to possibly criminal, but all are outside the duties owed to a corporation by those in charge.  Defendants misused corporate funds, committed waste, wrongfully terminated senior management, disregarded corporate formalities, and committed numerous frauds.  These actions have resulted in significant damage to DMH's finances, executive structure, and business reputation.

## FACTUAL ALLEGATIONS

The relationship between DMT and its controlling shareholders – Kazeminy and Candies – was troubled from the beginning.  In March 2007, however, trouble escalated.  It was then that Mr. McKim and others began to challenge transactions and activities being undertaken by or at the instruction of Kazeminy and Candies.  Questioning this authority, however, was not allowed and would eventually lead to the termination of several members of senior management including Mr. McKim.  Defendants' wrongful actions are numerous and include the following:

### a.    *Payments to Hays Companies*

In March 2007, Kazeminy began ordering the payment of corporate funds to companies and individuals who tendered no goods or services to DMT for the stated purpose of trying to financially assist United States Senator Norm Coleman of Minnesota.  In March 2007, Kazeminy telephoned B.J. Thomas, then DMT's Chief Financial Officer.  In that conversation, Kazeminy told Mr. Thomas that "U.S. Senators don't make [expletive deleted]" and that he was going to find a way to get money to United States Senator Norm Coleman of Minnesota and wanted to utilize DMT in the process.  Mr. Thomas later approached Mr. McKim, asking him whether this was appropriate and whether they should follow Kazeminy's orders.  Mr. McKim told him that it was not appropriate, and shortly thereafter he also spoke with Kazeminy.  In his conversation with Kazeminy, Mr. McKim was informed of the same purpose as was Mr. Thomas in his conversation with Kazeminy.  In this same conversation, Kazeminy told Mr. McKim that he [Kazeminy] would make sure there was paperwork to make it appear as though the payments were made in connection with legitimate transactions, explaining further that Senator Coleman's wife, Laurie, worked for the Hays Companies ("Hays"), an insurance broker in Minneapolis, and that the payments could be made to Hays for insurance.  When Mr. McKim made further objections, Kazeminy repeatedly threatened to fire Mr. McKim, telling him "this is my company" and that he and Mr. Thomas had better follow his orders in paying Hays.  Subsequently, Kazeminy caused Hays to produce a document entitled "Disclosure of Service Fee" which purported to legitimize the basis of the payments to be made to Hays by DMT.  <u>See</u> Exhibit "A".  After coercing Mr. McKim into signing the Disclosure of Service Fee document, Kazeminy continued to make threats, use intimidating tactics and undue influence on Messrs. Thomas and McKim.

In subsequent conversations, Kazeminy threatened Mr. McKim and further coerced him and others into making three payments of $25,000.00 from DMT to Hays. Mr. McKim told Mr. Thomas and others of his objections to Kazeminy's demand, and subsequently objected to and refused to approve any further payments. Kazeminy, extremely unhappy with Mr. McKim's objection to the payments, threatened to terminate Mr. Thomas and Mr. McKim if they did not continue to take care of making the payments to Hays. A total of three payments of $25,000 each were made. See Vendor Trial Balance attached hereto as Exhibit "B." DMT received four invoices (two of which are attached hereto as Exhibits "C" and "D") and made payment on three invoices from Hays for "Quarterly Installment of Service Fee." The fourth payment of $25,000, when it was in the process of being made, was stopped by Mr. McKim. Subsequently, Mr. McKim discussed this with Kazeminy, who again threatened to terminate Mr. McKim for his refusal to approve the payments, always alluding to the fact that he felt like his integrity was being challenged when Mr. McKim raised objections to the payments to Hays.

Hays provides risk management, insurance, and employee benefits consulting. It is also the employer of Senator Coleman's wife, Laurie, who is an aspiring actress and holds no insurance licenses in the State of Texas. Kazeminy informed Messrs. McKim and Thomas that Hays would funnel the money from DMT to Senator Coleman through the payment of compensation to his wife, Laurie, and that there was nothing to worry about. Laurie Coleman never provided any type of services or products to DMT, nor has any other person on behalf of Hays provided any type of services or products to DMT. Furthermore, at no time has Hays been licensed to broker insurance in the State of Texas. An affiliate of Hays previously filed paperwork with the Secretary of State of Texas to apply for the authority to conduct business in the State of Texas, listing "insurance brokerage" as the purpose for the filing. However, such

H-785451_1.DOC

filing is insufficient by itself to allow a company to broker insurance in the State of Texas. Hays was not then and is not now licensed with the Texas Department of Insurance. Neither Hays nor any of its affiliated companies have ever provided any goods or services to DMT. DMT has no other "service fee" agreements like this, and has never utilized the services of Hays, despite the fraudulent paperwork promoted by Kazeminy to ostensibly support some type of transaction between Hays and DMT. To the contrary, AON Inc., was, and continues to this day, to provide for DMT's insurance, risk management, and employee benefits needs.

Mr. Thomas' successor as chief financial officer of DMT is John Hudgens, an affiliate of Kazeminy and NJK. Mr. Hudgens was unilaterally hired for this position by Kazeminy, and in such capacity has been essentially a puppet for Kazeminy, seeking to further Kazeminy's personal interests by either aiding and abetting additional wrongdoings or assisting in the cover-up of past wrongdoings. On or about August 19, 2008, Mr. Hudgens attempted to hide at least one invoice by ordering employees of DMT to pull the detail on the Hays payments and delete such data from the books and records of DMT. See Exhibit "E". As is discussed subsequently in this Petition, when the putative counsel for the putative special litigation committee for DMT and DMH provided Mr. McKim with records he requested subsequent to the Claims, the cancelled checks to Hays, the Hays invoices, and the Aged A/P Summary reflecting Mr. Hudgens' instructions to pull and delete the detail on the Hays account were not provided, due to the fact that they were either concealed, destroyed or otherwise obstructed.

### b.    *Payments to Behnaz Ghaufouri*

In addition to causing payments to be made to Hays in exchange for no goods or services, Kazeminy ordered payment be made to one of his relatives, Behnaz Ghaufouri. On June 12,

2008, a $6,000.00 payment from Deep Marine Technology, Inc. was made to Ghaufouri in exchange for no corporate benefit. Defendant Hudgens signed the check. See Exhibit "F".

### c.   *Dealings with Otto Candies, LLC*

As Kazeminy's dominance and manipulation of DMH and DMT grew, so did the troubles with another large shareholder—Otto Candies, LLC and its Chief Executive Officer, Otto Candies, Jr. Both men—often in concert—acted in their own best interest and not in the interests of DMH or DMT. Mr. McKim's dissatisfaction with both of these men grew over time, but his dealings with Otto first began in 2004.

### 1.   *MV Mother Theresa*

In August 2004, DMT entered in to a number of transactions with Otto that resulted in significant loss and delay to DMT and financial gain to Otto. The first of these transactions, in August 2004, was the chartering of MV Mother Theresa from Otto. The agreement provided for a two year charter with a termination subject to prior written notice. DMT wished to terminate and provided notice to Otto, but Otto continued to invoice DMT. Otto contends to this day that DMT owes it an additional $1.2 million dollars even though the contract was terminated pursuant to the terms of the contract. This type of self-interested dealing would continue throughout DMT's relationship with Otto.

### 2.   *MV Agnes*

In June 2006, DMT leased the MV Agnes from Otto. The rate was to be approximately $30,000 per day which was to include crew and maintenance. Prior to leasing the vessel, Otto Candies, Jr. represented to McKim that the vessel would meet all United States Coast Guard requirements to perform dive operations. After DMT took delivery of the vessel, its independent inspectors revealed that the vessel system did not meet regulations necessary to perform diving

operations.  DMT was therefore required to invest a significant amount of time and money in

bringing the vessel up to Coast Guard standards, even though Otto had contractually agreed to

supply a sea ready vessel and DMT had paid for the same.  During this time, Otto continued to

charge DMT $30,000 per day for the lease despite DMT's inability to utilize the vessel.

The Agnes continued to have problems through October 2007.  DMT sent the MV Agnes

to Boston on a contract of $125,000.00 per day to work for Horizon Offshore.  Due to a lack of

maintenance by Otto, the vessel had significant mechanical difficulties and could not be utilized

for two months.  The delay cost DMT $7,500,000 in revenue, in addition to all the additional

charges for Otto during his period.

### 3.    *MV Emerald*

In May 2007, DMT agreed to purchase from Otto the MV Emerald for $22,000,000.00.

During the one year build-out of the vessel, Candies continuously represented that Otto would

provide the necessary crew and maintenance contract for the vessel.  Based upon this promise,

DMT secured a contract with BP utilizing the vessel.  Otto failed to provide a crew or to make

the vessel ready by deadline.  Two weeks prior to vessel completion, Candies informed McKim

that he would not provide the crew thus leaving DMT with a contractual obligation with BP and

no way to fulfill it.  McKim was forced to hire other crews.  In addition, at the time of closing,

Candies informed DMT that the purchase price had been arbitrarily increased by $6,000,000,

without justification or any legal basis.  Candies stated that DMT could "take it or leave it,"

disregarding the terms of the binding contract between DMT and Otto.

### 4.    *MV Diamond*

Thereafter, in December 2007, yet another Otto provided vessel began to cause DMT

problems.  These mechanical problems were only compounded by the lack of diligence by Otto's

repair crews.   The MV Diamond inspections revealed the vessel required repairs to the port propulsion unit and other areas before it could continue to work.   For four months the vessel was unusable.   During this time, however, Otto's maintenance crew was not performing repairs and was indifferent to the urgency of returning the vessel to work.  McKim eventually had Otto's crews removed from maintenance.   The repair time cost DMT $8,000,000.00 in revenues.

In July 2008, DMT was to be awarded a contract from Technip for the MV Diamond.  An audit of the vessel revealed over 160 outstanding and unacceptable items.   Technip informed DMT that it would not enter into a contract without correction of these items and replacement of the Otto Candies crew.   In order to secure the contract, McKim immediately replaced the crew on the MV Diamond.

5.    *MV Sapphire*

In January 2008, DMT purchased an additional vessel from Otto that was to have a new crane installed.   The crane cost $700,000.   Rather than provide the purchased crane, Otto provided it to a DMT competitor to whom Otto also leases other vessels.   Another used crane that was painted to appear new was instead provided.   On January 14, 2008, DMT hired a specialized crane service company to inspect and to confirm that the crane was used.   When Candies was informed by McKim about the findings, he stated that it was a "new crane—take it or leave it."

All of the wrongful dealings with Otto were sanctioned by the Board of Director Defendants either expressly or by acquiescence resulting in ongoing damage to DMH and/or DMT.  Even in the face of increasing complaints and protest by Mr. McKim, DMT continued to deal with Otto at the direction of Kazeminy and with the consent or acquiescence of board members, who are Defendants in this lawsuit.

### d.   *Wrongful Bank Transactions*

This same attitude has pervaded numerous wrongful banking and accounting transactions at the instruction of Kazeminy and Candies. Money has been flowing in and out of DMT's cash accounts to and from Otto Candies. The first of these occurred on August 18, 2008 when Otto Candies, Inc. transferred two (2) million dollars to the DMT Cash Concentration Account. The money was then booked at the direction of John Hudgens on the DMT General ledger as a Candies Customer Advance. Otto Candies, however, was not a customer of DMT. To the contrary, it was DMT who purchased goods and services from Otto.

These "advances" continued on September 9, 2008, when DMT received a $500,000.00 payment from Otto Candies Inc. that was deposited into the DMT Cash Concentration Account. Just over a week later, on September 17, 2008, however, this money was seemingly returned to Otto Candies, LLC. On that date, Defendant Hudgens approved a $500,000.00 payment back to Otto. The payment and subsequent return of the money had no business purpose and was not in connection with any proper business transaction.

These transactions are for no legitimate purpose and appear to have been undertaken in order to avoid bank covenants limiting the maximum amount of loans that DMT can take from investors. Kazeminy, Hudgens, and Candies, acted in concert to disguise improper cash advances. These actions created a substantial risk to DMT, DMH and their shareholders for possible allegations of fraud and could significantly impact the Company's financial stability.

### e.   *Failure to Comply with Corporate Formalities*

Many of the wrongful acts made the subject of the Claims and this lawsuit were accomplished through a complete disregard for corporate formalities. Many of the corporate activities occurred in this fashion. Kazeminy thought of DMH and DMT as "his companies" and

involved only those individuals who he had handpicked in the decision making process.  There were no board meetings—but there were "Nasser Meetings," which many people regarded as having the equivalent effect of board meetings.    The most recent example occurred at the October 13, 2008 Special Board Meeting that was called to address the Claims.  Upon calling in to the teleconferenced meeting, Mr. McKim—at the time, Chairman of the Board—learned for the first time that four new board members had been added.  Mr. McKim was not notified, did not participate, or have opportunity to vote on any of these members—all of who subsequently resigned after hearing many of these allegations. Invited to the meeting as a special guest was Otto Candies, Jr.—again without any notice to, comment or approval sought by, Mr. McKim.  At one point in the meeting, Defendant Gilman called Kazeminy by name, seeking to have him confirm his attendance in a roll call.  Kazeminy remained silent.

Furthermore, Kazeminy and other Co-Defendats backdated documents and records of DMH and DMT to make it appear as though persons signed particular documents on certain dates, in an attempt to legitimize various putative actions by the Board of Directors.   For example, resolutions purporting to be valid corporate actions by DMH and DMT were first circulated and signed subsequent to the October 13, 2008 board meeting, but such resolutions reflected a signature date of October 3, 2008 and a conflicting facsimile transmission date of October 10, 2008 for Defendant Lenig.  These resolutions purported to appoint Candies, III to the Board of Directors of DMH and DMT.  Evidencing the fact that no board meeting was ever called to approve those resolutions and that such resolutions were improper, Candies, III expressed his surprise at being on the board when he participated in the October 13, 2008 meeting. Often times, there was no meeting, no notice of a meeting, and the documents did not reflect all of the signatures required by law.  As was the case with most decisions for DMH and

DMT, Kazeminy made a decision and then found the requisite individuals to execute that decision—despite the fact that the DMH Oversight Agreement did not grant to NJK or Kazeminy the right to do anything related to DMT. The DMH Oversight Agreement only covers matters related to DMH, and the OSA executed for DMT was terminated as a result of the DMH Oversight Agreement. Thus, even if the OSA and DMH Oversight Agreement were valid, which they are not, whoever prepared the DMH Oversight Agreement did not prepare it in such a way that gave NJK any powers or authority with regard to DMT.

When a board member or senior management voiced concern or dissent they were quickly shut out, threatened, and/or terminated; Mr. McKim was one of these individuals. Kazeminy recognized as much in his July 30, 2008 memorandum to the DMT employees when he wrote, as the "controlling shareholder," that Otto Candies, Jr., the Board and he, had decided to make some changes. These included promoting Wade Abadie to Executive Vice President and bringing in Otto Candies, III to assist in reviewing the company's financial structure. On that day, after months of challenging and fighting with Kazeminy and Candies over all of their wrongful activities, Mr. McKim was ostensibly promoted to Chairman of the Board of Directors—and attempts were made to remove Mr. McKim as Chief Executive Officer. Later that same day, Mr. McKim was asked to leave the business that he started and to never return.

## CAUSES OF ACTION

a.      *Breach of Fiduciary Duties*

The Defendants, by way of their positions as officers, directors, or controlling shareholders, owed  DMT and DMH and shareholders the fiduciary obligations of good faith, loyalty, and due care and were required to control and manage DMT and DMH in a fair, just, honest, and equitable manner. Defendants were required to act in the best interests of the

company and its shareholders and not in their own personal interest. The Board Member Defendants owed DMH, DMT and their shareholders a duty to exercise a high degree of due care, loyalty, and honest diligence in the management and administration of the affairs of DMH and DMT, as well as in the use, preservation and fulfillment of its property, assets, and legal obligations. The Board Defendants knowingly violated their obligations as directors of DMH and DMT and exhibited an absence of good faith and a disregard for the legality of their actions and duties to DMH and DMT. The individual Defendants were aware or should have been aware of the ongoing and potential damage to DMH and DMT.

The Board Defendants and officers were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial affairs of DMH and DMT. The individual Defendants, by way of their ability to control DMH's and DMT's corporate and business affairs, owed DMH, DMT and shareholders the obligations of candor, fidelity, trust, honesty, and loyalty, and were required to act in a fair, just and equitable manner in the best interests of DMH, DMT and their shareholders.

The individual Defendants participated in the wrongdoing in order to improperly benefit themselves. Such participation included the creating, proposing, authorizing, approving or acquiescing in the wrongful conduct of Kazeminy, Otto and the Board members and/or other officers, most of whom are Defendants in this lawsuit.

The Defendants, either intentionally, or through gross negligence, allowed Kazeminy and Otto Candies to control DMH and DMT and use the corporate coffers for their own economic benefit. Specifically, Defendants breached their fiduciary duties by:

1.      directing improper payments to Hays for the benefit Senator Norm Coleman and his spouse for no legitimate business purpose;

H-785451_1.DOC

2.     making improper monetary gifts to Mr. Kazeminy's relatives;

3.     approving wasteful and self-dealing transactions with Otto Candies, LLC;

4.     failing to operate in a diligent, honest and prudent manner in compliance with corporate formalities;

5.     directing senior management to commit fraud in negotiating the sale of assets;

6.     accepting and fraudulently accounting for monetary advances;

7.     terminating and attempting to terminate senior management who challenged these actions in violation of law.

The Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit Defendants at the expense of DMH and DMT.

As a result of Defendants' misconduct, DMH and DMT have been damaged financially and are entitled to a recovery of monetary and non-monetary relief as a result thereof.

### b.    *Knowingly Participating in a Breach of Fiduciary Duty*

All of the Defendants knew that the officers, board members, and controlling shareholders have fiduciary duties to DMT and DMH. Defendants knowingly participated in the breach of fiduciary duties by the others when they engaged, employed or implored them to:

1.     direct improper payments to Hays for the benefit Senator Norm Coleman and his spouse for no legitimate business purpose;

2.     make improper monetary gifts to Mr. Kazeminy's relatives;

3.     approve wasteful and self-dealing transactions with Otto Candies, LLC;

4.     fail to operate in a diligent, honest and prudent manner in compliance with corporate formalities;

5.     direct senior management to commit fraud in negotiating the sale of assets;

6.      accept and fraudulently account for monetary advances;

7.      terminate and attempt to terminate senior management who challenged these actions in violation of law.

On numerous occasions the officers, board members, and controlling shareholders of DMH and DMT breached their duties and all Defendants knowingly participated in these acts.

The Defendants' conduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did unduly benefit the personal interests of Defendants at the expense of DMT and DMH.

As a result of the knowing participation in the breaches of fiduciary duties, DMT and DMH and shareholders have sustained damages, including, but not limited to, the loss of funds as a result of waste and self-dealing.

### c.    *Conspiracy and/or Aiding and Abetting*

The Defendants agreed to and did participate with and/or aided and abetted one another in a deliberate course of action designed to deliver corporate assets to themselves and/or others. The Defendants also agreed to and did participate with and/or aided and abetted one another in a deliberate course of action designed to commit fraud on third-parties.

The Defendants' conduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did unduly benefit the personal interests of Defendants at the expense of DMH and DMT.

As a result of the conspiracy and/or aiding and abetting in the breaches of fiduciary duties, DMH, DMT and their shareholders have sustained damages, including, but not limited to, the loss of funds as a result of waste and self-dealing.

### d.    *Unjust Enrichment*

Defendants Otto Candies, Jr. and Otto Candies, LLC were unjustly enriched by their receipt of overpayments and undue proceeds that were wrongly paid by DMH and/or DMT. It would be unconscionable to allow them to retain the benefits of these proceeds at the detriment of DMH and/or DMT.

As a result of this unjust enrichment, DMH, DMT and shareholders have sustained damages, including, but not limited to, the loss of funds as a result of waste and self-dealing.

### e.    *Wrongful Discharge*

In addition to founding the company, Mr. McKim served as the Chief Executive Officer of DMT and DMH. When Mr. McKim refused to perform numerous nefarious and illegal acts at the behest of Kazeminy, Kazeminy fired Mr. McKim. Mr. McKim's termination resulted from his refusal to perform illegal acts mandated by Kazeminy. As a result of Mr. McKim's wrongful discharge, Mr. McKim has sustained damages, including but not limited to back pay, future pay and mental anguish.

### f.    *Quantum Meruit*

Mr. McKim provided valuable services to Kazeminy. Kazeminy accepted those services, and had reasonable notice that Mr. McKim expected compensation for those services. As a result of Kazeminy's failure to compensate Mr. McKim for services rendered, Mr. McKim has sustained damages.

### g.    *Tortious Interference with Existing Contract*

Candies willfully and intentionally interfered with Mr. McKim's employment with DMH and DMT. Candies knew that DMH and DMT employed Mr. McKim. After Mr. McKim complained and protested about the wrongful dealings with Otto, Candies actively sought to have Mr. McKim terminated. Candies' interference proximately caused Mr. McKim's termination,

H-785451_1.DOC

and resulted in damages sustained by Mr. McKim, including but not limited to back pay, future pay, and mental anguish.   Mr. McKim also seeks exemplary damages for Candies' tortious interference.

### h.    *Appointment of Receiver to Operate DMH Pending Derivative Action*

Plaintiff asserts that the acts of the Defendants and others in control of DMH and DMT are and have been illegal, oppressive or fraudulent, and that the corporate assets of DMH and DMT have been and continue to be misapplied or wasted.  Accordingly, pursuant to Article 7.05 of the Texas Business Corporation Act and Delaware Chancery Court Rule 149, Plaintiff seeks the appointment of a Receiver for DMH and DMT pending the outcome of the Claims and this action.   Appointment of a Receiver is the most appropriate non-monetary relief under the circumstances, and will help the court insure that further wrongdoings are not committed.

## DERIVATIVE DEMAND AND WAITING PERIOD EXCUSED

Plaintiff brings this action, in part, derivatively in the right and for the benefit of DMH and DMT to redress the Defendants' wrongful actions.

Plaintiff is an owner of DMH shares and was an owner at all times relevant to this matter. Plaintiff was also an owner of DMT shares and was an owner at all times prior to the DMT restructuring.

Plaintiff will adequately and fairly represent the interests of DMH and DMT and their shareholders in enforcing and prosecuting their rights.

Plaintiff has not made any demand on the DMH or DMT Board of Directors prior to instituting this action against the Defendants.  Such demand would be futile because the Boards of Directors of DMH and DMT are incapable of making an independent and disinterested decision to institute and vigorously prosecute.

H-785451_1.DOC

At the time of the October 13, 2008 meeting of the Board, Mr. McKim was unaware of who was on the Board. As previously noted, Candies, III expressed surprise when finding out that he was on the Board. At the October 13, 2008 Board meeting, a total of seven people were purportedly on the Board (McKim, Gilman, Lenig, Erickson, DePalma, Abadie and Candies, III). Shortly after hearing the Claims at the October 13, 2008 meeting, Defendants DePalma, Abadie, Erickson and Candies, III "abandoned ship" by resigning from the Board of DMH and DMT.

At the time this action was commenced, the Board consisted of three directors: Gilman, Lening, and McKim. However, consistent with Mr. McKim's objection at the October 13, 2008 meeting, Gilman and Lening are incapable of independently and disinterestedly defending the Claims. Gilman and Lenig are not independent or disinterested in considering the Claims or in determining whether a demand to commence and vigorously prosecute this action in defense of the Claims for the following reasons:

1.    Gilman and Lening are both named Defendants in this matter and participated in or consented to the wrongdoings. As named Defendants they also have a vested interest in the outcome of this matter;

2.    Gilman and Lening both have financial interests in DMH in that they both have equity options;

3.    Gilman and Lening were invited to join the Board of Directors by Kazeminy via NJK and, therefore, are beholden to Kazeminy and NJK and, at worst, not even validly elected members of the Board of Directors;

4.    Gilman and Lening continue to sanction the ongoing, wrongful exclusion of McKim from DMH and DMT affairs, including most recently approving the appointment of four new board members (all of who have subsequently resigned) without any notification or consultation with McKim even though he still sits as Chairman of the Board and CEO;

5.    Lening and his employer the ComVest Group have extensive financial ties to Nasser Kazeminy and DCC Ventures;

6.    Gilman declared to those persons in attendance at the October 13, 2008 meeting that he only agreed to serve in the roles he was then serving

H-785451_1.DOC

because he "had a gun to my head" at the time of his appointment, evidencing a troubling level of coercion or duress that had occurred in the process of his appointment;

7.     Lenig failed to disclose the entire extent of his financial and business ties to Kazeminy, and declared that he had been through situations like this many times to those persons in attendance at the October 13, 2008 meeting, after which he nominated himself and Gilman to serve as the members of the special litigation committee ("the SLC"); and

8.     Lenig, after failing to disclose the entire extent of his financial and business ties to Greenberg Traurig ("Greenberg"), nominated that law firm to serve as special counsel to the SLC.

In addition to the above, Gilman and Lening have vested interests in continuing the status quo at DMH and DMT, and appeasing Kazeminy. Moreover, Greenberg has, simultaneously with its putative service as special counsel to the SLC, been engaged in matters unrelated to the Claims, including negotiations with certain shareholders of DMH for the potential buy-out of their interests, all in contradiction to Greenberg's putative and stated role as a non-advocate, truth-finder and fact-finder. The law firm Winthrop Weinstein even entered the process by threatening counsel to the shareholders making the Claims, and then later re-directing all matters related to the potential buy-out of those same shareholders to Greenberg. There are so many other business and financial ties to Kazeminy that it is next to impossible to comprehend the magnitude of the conflicts of interests and full extent to which Lenig and Gilman and others are incapable of independently and disinterestedly defending the Claims or considering a demand to commence and vigorously prosecute this action. For that reason, Exhibit G to this Petition illustrates the complexity of the business and financial ties to Kazeminy. Mr. McKim, as the only member of the Board of Directors who is not beholden to Kazeminy in some form or fashion, has been constructively removed from having any day-to-day involvement with the operations of DMT and the workings of DMH. Therefore, unless a Receiver and truly independent and disinterested

SLC is formed, a continuation of the status quo will be ineffectual and allow the wrongful acts to continue.

In addition to the lack of independence and disinterest of the Board Member Defendants, demand is excused because the misconduct complained of could not have been the exercise of good faith business judgment. The allegations against Defendants are extensive and involve not only questionable deals and corporate sloppiness, but also direct pillaging of the corporate coffers and possible criminal activities. The practice of paying individuals for no services or goods, accepting improper customer advances, entering into unprofitable transactions with shareholders, failing to maintain any corporate formalities, and summarily dismissing anyone who questions these actions cannot be a valid business judgment. It not only costs DMH and DMT millions of dollars in revenues, it also exposes DMH and DMT to potential liability.

## PRAYER

McKim asks that this Court enter judgment in favor of DMH, DMT and Mr. McKim:

A.   that Defendants breached their fiduciary duties;

B.   that Defendants knowingly participated in a breach of fiduciary duties;

C.   that Defendants conspired to and/or aided and abetted a breach fiduciary duties;

D.   that Defendants were unjustly enriched at the expense of DMH and DMT;

E.   that Kazeminy wrongfully terminated Mr. McKim;

F.   that Kazeminy must compensate Mr. McKim for services rendered;

G.   that Candies tortiously interfered with Mr. McKim's employment with DMH and DMT;

H.   ordering that a Receiver be appointed to oversee DMH and DMT during the course of this action;

H-785451_1.DOC

I.      appointing persons to a special litigation committee for DMH and DMT who are not Defendants in this action and who are capable of independently and disinterestedly defending the Claims, or granting such authority to the Receiver;

J.      ordering Kazeminy and Candies to not take any actions that would be detrimental to DMT or DMH, including, but not limiting to changing the make-up of the Board of Directors;

K.      for reasonable attorneys' fees, court costs and related expenses;

L.      for pre-judgment and post-judgment interest as permitted by law; and

M.      for such other relief the Court deems just and equitable under the circumstances.

Respectfully submitted,

Casey T. Wallace
Texas Bar No. 00795827
Sandy D. Hellums
Texas Bar No. 24036750
HAYNES AND BOONE, LLP
One Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone:  713.547.2516
Telecopier:  713.236.5695

**ATTORNEYS FOR PAUL MCKIM**

H-785451_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2009, a true and correct copy of the foregoing instrument was served on all counsel of record and parties of interest.

K. B. Battaglini
Jennifer Tomsen
Greenberg Traurig, LLP
1000 Louisiana, Suite 1700
Houston, Texas  77002
ATTORNEYS FOR DEEP MARINE HOLDINGS, INC.
and DEEP MARINE TECHNOLOGY, INC.

Charles Parker
Charley Davidson
Locke, Lord, Bissell & Liddell, LLP
3400  JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002
ATTORNEYS FOR B. J. THOMAS

Robert R. Weinstine
Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota  55402-4629
ATTORNEYS FOR DCC VENTURES, LLC,
EUGENE DEPALMA, DANIEL ERICKSON, JOHN HUDGENS,
NASSER KAZEMINY, and NJK HOLDING CORP.

Mr. Thomas J. Cortazzo
Baldwin Haspel Burke & Mayer, LLC
Energy Centre, 22nd Floor
1100 Poydras St.
New Orleans, Louisiana  70163
ATTORNEYS FOR OTTO CANDIES, III, OTTO CANDIES, JR.,
and OTTO CANDIES, LLC

Geoffrey L. Harrison
Eric J. Mayer
Sammy Ford IV
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas  77002-5096
ATTORNEYS FOR WADE ABADIE,
BRUCE GILMAN, LARRY LENIG

H-785451_1.DOC

Matthew D. Orwig
Sonnenschein Nath & Rosenthal LLP
1717 Main Street, Suite 3400
Dallas, Texas  75201-7395
ATTORNEYS FOR JOHN ELLINGBOE

Anthony Paduano
Katherine B Harrison
Paduano & Weintraub LLP
1251 Avenue of the Americas, 9th Floor
New York, New York  10020
ATTORNEYS FOR FLI DEEP MARINE, LLC
BRESSNER PARTNERS, LTD.

_____
Casey T. Wallace

H-785451_1.DOC