# EXHIBIT C

NO. 2008-64385

| | | |
|---|---|---|
| PAUL MCKIM, Individually and Derivatively on behalf of Nominal Defendants Deep Marine Holdings Inc. and Deep Marine Technology Inc., | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| vs. | § § § | HARRIS COUNTY, TEXAS |
| NASSER KAZEMINY, OTTO CANDIES JR., JOHN HUDGENS, DCC VENTURES LLC, OTTO CANDIES LLC, NJK HOLDING CORPORATION, OTTO CANDIES III, JOHN ELLINGBOE, DANIEL ERICKSON, LARRY LENIG JR., BRUCE C. GILMAN, EUGENE DEPALMA, and WADE ABADIE JR., | § § § § § § § § § § § § § § | |
| Defendants, | § § | |
| and | § § | |
| DEEP MARINE HOLDINGS INC. and DEEP MARINE TECHNOLOGY INC., | § § § | |
| Nominal Defendants. | § | 129th JUDICIAL DISTRICT |

## AMENDED MOTION TO DISMISS

The undersigned attorneys appear on behalf of the Special Litigation Committee ("SLC")

of the Boards of Directors of Deep Marine Holdings Inc., a Delaware corporation ("DMH"), and

its wholly-owned subsidiary Deep Marine Technology Inc., a Texas corporation ("DMT"), and

move to dismiss this action pursuant to TEX. BUS. ORGS. CODE § 21.558 and TEX. BUS. CORP.

ACT art. 5.14(F) and under Delaware substantive law because the SLC has determined in good faith, after conducting a reasonable inquiry and based on the factors the SLC considered appropriate under the circumstances, that continuation of this action is detrimental and not in the best interests of DMH and DMT.  The Boards of Directors of DMH and DMT have adopted a resolution to assume control of, and to dismiss, this action.

## Grounds

Plaintiff Paul McKim ("McKim") purports to bring this action as "a shareholder's derivative action brought in defense of the Claims and for the benefit of nominal defendants DMH and DMT."  *See* Plaintiff's First Amended Petition at p. 3.  However, McKim is no longer a shareholder of DMH or DMT, and does not fairly and adequately represent their interests. McKim therefore lacks standing to commence or maintain a shareholder derivative action on behalf of DMH and DMT.

McKim did not make demand and was not authorized by the Boards of Directors of DMH or DMT to commence this action.  McKim admits that he "has not made any demand on the DMH or DMT Board of Directors prior to instituting this action against the Defendants."  *See* Plaintiff's First Amended Petition at p. 24.  McKim states that "Such demand would be futile because the Boards of Directors of DMH and DMT are incapable of making an independent and disinterested decision to institute and vigorously prosecute."  *Id.*  However, McKim has not pleaded particularized facts creating a reasonable doubt that the directors are disinterested and independent, or that the challenged transactions were the product of valid exercises of business judgment.  McKim therefore fails to satisfy the demand requirement or the futility exception for commencing a shareholder derivative action.

Special Counsel for the SLC commenced and completed an 8-month investigation of the allegations contained in McKim's pleadings, and have determined that there is no evidence to support those allegations. The final report containing the findings of Special Counsel is incorporated herein by reference, and a copy of the final report will be filed with this court under seal for this court's *in camera* review. On the basis of the findings in the final report, the SLC has determined in good faith, after conducting a reasonable inquiry and based on the factors the SLC considered appropriate under the circumstances, that continuation of this action is detrimental and not in the best interests of DMH and DMT. As a result, the Boards of Directors of DMH and DMT have adopted a resolution to assume control of, and to dismiss, this action, and have authorized the SLC to file this motion on behalf of DMH and DMT.

### Pertinent Facts

By letter dated October 10, 2008, shareholders FLI Deep Marine LLC, Bressner Trust[1], and Harvey Langberg made demand upon DMH and DMT to "take immediate action to remedy serious breaches of fiduciary duty by certain employees, officers and directors of DMT and others who have diverted and/or misappropriated corporate assets…causing substantial injury to the corporation," and to establish a special committee to investigate alleged breaches of fiduciary duty, take action to end any such breaches or fraudulent activities, bring action to recover funds wrongfully diverted from the companies, and establish procedures and processes to ensure that the alleged wrongdoing does not reoccur.

On Monday, October 13, 2008, the Boards of Directors of DMH and DMT convened to consider the shareholder demand letter, and conducted a proper vote to establish the SLC. The

---

[1] According to the records of DMH, the shareholder is actually Bressner Partners, Ltd.

SLC then immediately retained the undersigned attorneys as special investigatory and litigation counsel ("Special Counsel") to investigate alleged breaches of fiduciary duty, recommend actions to be taken to end any such breaches or fraudulent activities, and, if necessary, bring action to recover funds wrongfully diverted from DMH or DMT. Special Counsel then immediately initiated an internal investigation with respect to (a) allegations set forth in the shareholder demand letter, (b) formal and informal allegations made by McKim and B. J. Thomas ("Thomas") regarding DMH and DMT and their shareholders, and (c) the conduct of McKim and Thomas in their former roles as officers of DMH and DMT. The retention of Special Counsel and the scope of the investigation was immediately communicated to counsel for shareholders FLI Deep Marine LLC and Bressner Partners Ltd. and to counsel for McKim.

As part of the investigation, Special Counsel conducted interviews of pertinent fact witnesses and requested to take the depositions of McKim and Thomas, who are individuals figuring prominently in the investigation. While the undersigned Special Counsel were negotiating with counsel for McKim to take McKim's deposition, counsel for McKim prepared and filed on October 27, 2008, a purported shareholder derivative action in the 129th Judicial District Court, Harris County, Texas, as Cause No. 2008-64124. Counsel for McKim did not serve but instead non-suited the purported shareholder derivative action on the very next day. Then, on October 30, 2008, counsel for McKim refiled, but did not serve, the same lawsuit as Cause No. 2008-64385 in the 129th Judicial District Court, Harris County, Texas.

Because McKim declined to cooperate in making himself available for a deposition, and because of difficulty in locating witness Thomas, the undersigned Special Counsel on October 31, 2008, filed an Original Rule 202 Petition for the purpose of taking the depositions of McKim

and Thomas.  The Rule 202 petition was assigned to the 133rd Judicial District Court, Harris County, Texas, as Cause No. 2008-65512.

On November 3, 2008, shareholders FLI Deep Marine LLC and Bressner Partners Ltd. filed a shareholder derivative action in the Chancery Court, State of Delaware, purportedly on behalf of DMH and DMT, against McKim, Daniel Erickson, Francis Wade Abadie, Otto Candies III, Eugene DePalma, Larry Lenig, Bruce Gilman, John Hudgens, Nasser Kazeminy, NJK Holdings Corporation, DCC Ventures, LLC, Otto Candies LLC and Otto Candies Jr.  The Delaware complaint alleged, among other things, that the individual defendants breached their fiduciary duties to the shareholders and DMT by failing to exercise "reasonable and prudent supervision over the management, policies, practices, controls and financial affairs of DMT." The Delaware action essentially mirrored the Texas action, with the notable exception that McKim was named as a defendant in the Delaware action.

On November 4, 2008, the undersigned Special Counsel filed an Amended Rule 202 Petition in the 133rd Judicial District Court, Harris County, Texas.  On November 12, 2008, McKim filed an Objection to Petitioners' Amended Rule 202 Petition, and filed an Alternative Cross-Petition for the Deposition of Nasser Kazeminy.

On November 17, 2008, a hearing was convened in the 133rd Judicial District Court and was attended by counsel for the SLC and by counsel for McKim and Thomas.  At the hearing, the court did not consider the relief sought by the SLC, but instead stated an intention to transfer Cause No. 2008-65512 to the 129th Judicial District Court.

On November 21, 2008, the SLC filed a motion to dismiss, or in the alternative to stay, the Delaware action on the grounds that, by serving the October 10, 2008 shareholder demand

letter, the Delaware Plaintiffs conceded that demand was not futile. The SLC pleaded in the alternative that the Delaware action should be stayed until the investigation being conducted by Special Counsel was concluded and any necessary action was taken by the SLC.

On November 25, 2008, the 133rd Judicial District Court entered an order transferring Cause No. 2008-65512 (the Rule 202 Petition) to the 129th Judicial District Court.

On December 12, 2008, McKim served some of the defendants, including nominal defendants DMH and DMT, with Plaintiff's Original Petition in this action. On January 5, 2009, the SLC and certain of the named defendants moved to stay this action. On February 3, 2009, this court entered an Order Granting Motions to Stay.

On March 2, 2009, this court entered an Order in the Rule 202 Proceeding authorizing Special Counsel to take the depositions of McKim and Thomas. The deposition of Thomas was taken on March 19, 2009, and the deposition of McKim was taken on April 7, 2009.

On April 21, 2009, the Delaware Chancery Court granted the SLC's motion to dismiss, and dismissed the Delaware action. *See* FLI Deep Marine LLC v. McKim, 2009 WL 204363, *2 (Del. Ch. April 21, 2009).

Special Counsel for the SLC have now concluded the investigation, and a final report has been issued. On the basis of the findings in the final report, and because McKim was not authorized to commence this action, because McKim lacks standing to commence or maintain this action, because McKim failed to satisfy the statutory demand requirement or the demand futility exception, and because the SLC recommended that maintenance of this action is detrimental and not in the best interests of DMH and DMT, the Boards of Directors of DMH and DMT have adopted a resolution to assume control of, and to dismiss, this action.

### Applicable law and argument

A shareholder that files a derivative proceeding in Texas is bound by the statutory requirements of the Texas Business Organizations Code and the Texas Business Corporation Act, which provide in pertinent part that "in any derivative proceeding brought in the right of a foreign corporation, the matters covered by this Article are governed by the laws of the jurisdiction of incorporation of the foreign corporation, except for Sections D, I and J of this Article, which are procedural and not matters related to the internal affairs of the foreign corporation." *See* TEX. BUS. ORGS. CODE § 21.562; TEX. BUS. CORP. ACT art. 5.14(K).  As such, as to DMT, the Texas Business Organizations Code and the Texas Business Corporation Act apply, and as to DMH, Delaware substantive law applies. *In re Crown Castle*, 247 S.W.3d 349, 352 (Tex. App.--Houston [14th Dist.] 2008, orig. proceeding).

#### a. McKim lacks standing

Under Texas law, a shareholder may not commence or maintain a derivative proceeding unless the shareholder (1) was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder by operation of law from a person that was a shareholder at that time, and (2) fairly and adequately represents the interests of the corporation in enforcing the right of the corporation. *See* TEX. BUS. ORGS. CODE § 21.552(a); TEX. BUS. CORP. ACT art. 5.14(B).  A shareholder must remain a shareholder in order to maintain a derivative suit. *Zauber v. Murray Sav. Ass'n*, 591 S.W.2d 932, 935 (Tex. Civ. App.--Dallas 1979), writ ref'd per curiam, 601 S.W.2d 940 (Tex. 1980); *Prudential-Bache Secs. Inc. v. Matthews*, 627 F. Supp. 622, 624 (S.D. Tex. 1986) ("Texas law mandates that a derivative plaintiff maintain status as a shareholder").  At the time McKim commenced this action, he was not a shareholder of DMT.

Because McKim voluntarily disposed of his DMT shares prior to commencing this action, he necessarily destroyed the technical foundation of his right to commence this action on behalf of DMT. *See Somers v. Crane*, 01-07-00754 (Tex. App.--Houston [1ˢᵗ Dist.] 3-26-2009).  He therefore lacks standing to sue on behalf of DMT.

Under Delaware law, in any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law.  *See* 8 DEL. CODE § 327.  A stockholder must maintain his status as a stockholder throughout the derivative litigation.  *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984).  A merger which eliminates ownership of stock eliminates standing to pursue a derivative suit.  *Id.* at 1047.  Here, effective July 1, 2009, NKOC Inc., a Delaware corporation, merged with and into DMH.  As a result of the merger, each share of common stock of DMH ceased to exist, and each shareholder was offered merger consideration in the form of cash.  This is referred to as "cash out merger."  Although McKim owned shares of DMH common stock at the time he commenced this action, those shares were eliminated by virtue of the cash-out merger.  Moreover, McKim exercised appraisal rights with respect to the value of his stock following the merger.  By demanding appraisal, McKim elected to withdrew from the corporate enterprise and take the value of this stock.  *See Alabama By-Products v. Cede & Co.*, 657 A.2d 254, 258 (Del. 1995).  McKim's status has thus been transformed from that of equity owner of pre-merger DMH to that of quasi-creditor with a monetary claim against the surviving corporation.  *See Alabama By-Products* at 259.  McKim's standing to continue this derivative proceeding on behalf of DMH has thus been eliminated.

Moreover, McKim cannot fairly and adequately represent the interests of the corporation in enforcing the right of the corporation because (a) the conduct of McKim as a former director and officer of DMH and DMT figures prominently in the 8-month investigation conducted by Special Counsel, (b) the investigation did not reveal any credible evidence to support McKim's allegations, (c) of the matters identified in McKim's pleadings in this action, McKim played the part of antagonist, (d) McKim's employment with DMH and DMT was terminated because of his conduct, and (e) the investigation revealed that McKim is himself culpable for breach of fiduciary duty. For these reasons, and because his status as a shareholder has been eliminated, McKim lacks standing to commence or maintain a shareholder derivative action on behalf of DMH and DMT. On this basis alone, McKim's shareholder derivative action should be dismissed.

### b. McKim failed to satisfy the demand requirement

In Texas, no shareholder may commence a derivative proceeding until a written demand is filed with the corporation setting forth with particularity the act, omission or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action, and 90 days have expired from the date the demand was made, unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation is being suffered or would result by waiting for the expiration of the 90-day period. *See* TEX. BUS. ORGS. CODE § 21.553; TEX. BUS. CORP. ACT art. 5.14(C). Here, McKim made no written demand, did not allow for the expiration of 90 days before commencing this action, and made no prima facie showing that irreparable injury would occur. As such, McKim

has not satisfied the Texas statutory demand requirements for commencing a shareholder derivative action.

Likewise, Delaware law imposes certain prerequisites on a shareholder's right to sue derivatively. *See Stone v. Ritter*, 911 A.2d 362, 366 (Del. 2006); *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990) ("The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation. Consequently, such decisions are part of the responsibility of the board of directors."); *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984) (directors, and not shareholders, manage the business and affairs of the corporation). A shareholder's right to bring a derivative action does not arise until: (1) he has made a demand on the board of directors to institute such an action and such demand has been wrongfully refused; or (2) the shareholder has demonstrated, with particularity, that demand is excused because it would be futile. *See* DEL. CH. CT. R. 23.1; *Stone*, 911 A.2d at 366-67; *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006); *Spiegel*, 571 A.2d at 773; *Aronson*, 473 A.2d at 811-12. The demand requirement "implements 'the basic principle of corporate governance that the decisions of a corporation -- including the decision to initiate litigation --should be made by the board of directors or the majority of shareholders.'" *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 101 (1991). The purpose of the demand requirement is "to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen*, 500 U.S. at 96; *see also Rales*, 634 A.2d at 933 ("[b]ecause such derivative suits challenge the propriety of decisions made by directors pursuant to their managerial authority, we have repeatedly held that the stockholder plaintiffs must overcome the

powerful presumptions of the business judgment rule before they will be permitted to pursue the derivative claim"); *see also Aronson*, 473 A.2d at 813 (the business judgment rule is an acknowledgement of the managerial prerogatives of Delaware directors and a presumption that in making a business decision the directors acted on an informed basis, in good faith and in the best interests of the company). McKim has not satisfied the Delaware demand requirement for commencing a shareholder derivative action. The burden for demonstrating demand futility lies with the shareholder. *See Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004); *Aronson*, 473 A.2d at 812.

### c. McKim has not demonstrated demand futility

Because of the powerful presumptions of the business judgment rule, shareholder plaintiffs are subjected to a heightened pleading standard, requiring a shareholder's allegations of demand futility to "comply with stringent requirements of factual particularity." *See Stone*, 911 A.2d at 367 n. 9; *Brehm*, 746 A.2d at 254; *Aronson*, 473 A.2d at 811. The standard is not satisfied by conclusory statements or mere notice pleading. *See Brehm*, 746 A.2d at 254. The pleading standard for demand futility requires a fact-intensive, director-by-director analysis. *See Postorivo v. AG Paintball Holdings Inc.*, No. 2991-VCP, 3111-VCP, 2008 WL 553205, *6-7 (Del.Ch. Feb. 29, 2008) (mem.op.). The shareholder must set forth particularized factual statements that are essential to the claim, which are sometimes also referred to as "ultimate facts," "principal facts," or "elemental facts." *See Brehm*, 746 A.2d at 254.

In order for a shareholder to demonstrate demand futility, a shareholder must show the directors are under an influence that sterilizes their discretion or they are incapable of making an impartial decision. *See Rales*, 634 A.2d at 932; *Aronson*, 473 A.2d at 811; *Kohls v. Duthie*, 791

A.2d 772, 779 (Del.Ch. 2000). However, there is a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the corporation, i.e., directors are entitled to the presumption that they were faithful to their fiduciary duties. *See Beam*, 845 A.2d at 1048; *Aronson*, 473 A.2d at 812. According to Delaware law, demand futility must be determined pursuant to either the standards articulated in *Aronson* or those set forth in *Rales*. *See Braddock*, 906 A.2d at 784.

When a shareholder's causes of action in a derivative suit arise from an *affirmative business decision* made by a corporation's board of directors, courts apply the two-part *Aronson* test. *See Braddock*, 906 A.2d at 784; *Aronson*, 473 A.2d at 814. Under the *Aronson* test, demand will be excused if the shareholder pleads particularized facts creating a reasonable doubt that: (1) the directors are disinterested and independent; or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *See Braddock*, 906 A.2d at 784. These two parts of the *Aronson* test are in the disjunctive, so if either part is satisfied, demand is excused. *See Brehm*, 746 A.2d at 256. However, the Delaware Supreme Court has recognized the existence of situations in which the *Aronson* test cannot apply. *See Rales*, 634 A.2d 927; *Kohls*, 791 A.2d at 780. Where a corporation's board of directors is sued derivatively because they have *failed to do something*, demand is not excused, unless there are allegations demonstrating why the board is incapable of considering a demand. *See Rales*, 634 A.2d at 934 n. 9; *Kohls*, 791 A.2d at 780; *see also Stone*, 911 A.2d at 367 (in *Stone*, plaintiffs conceded *Rales* test applied in absence of business decision). There are three scenarios in which the *Rales* test, rather than the *Aronson* test, applies: (1) a business decision was made by the board of directors,

but a majority of the directors making the decision has been replaced; (2) the subject of the derivative suit is not a business decision of the board of directors; and (3) the decision being challenged was made by the board of directors of a different corporation. *See Braddock*, 906 A.2d at 784; *Rales*, 634 A.2d at 933-34. Under the *Rales* test, demand is excused only where a shareholder pleads particularized facts that create a reasonable doubt the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand at the time the petition was filed. *See Braddock*, 906 A.2d at 784; *Rales*, 634 A.2d at 934. Generally, the difference between the *Aronson* test and the *Rales* test is that courts do not apply the second part of the *Aronson* test under the *Rales* test. *See Guttman v. Huang*, 823 A.2d 492, 499-501 (Del.Ch. 2003) (second part of *Aronson* test excuses demand if shareholder pleads particularized facts creating a reasonable doubt that challenged transaction was otherwise product of valid business judgment).

### 1. First part of *Aronson* test and *Rales* test

Under both the first part of the *Aronson* test and the *Rales* test, a shareholder must plead, with particularity, facts that raise a reasonable doubt that a majority of the directors (or in the case of an even number of directors, exactly half) are disinterested and independent, demonstrating that they are unable to act objectively with respect to a pre-suit demand. *See Beam*, 845 A.2d at 1049; *Orman v. Cullman*, 794 A.2d 5, 22 (Del.Ch. 2002); *see also In re InfoUSA* No. 1956-CC, 2007 WL 2419611, *16 (Del.Ch. Aug.20, 2007) (mem.op.) (if even number of directors show exactly half). It is not enough for a shareholder to merely assert that demand is futile because: (1) the directors would have to sue themselves; or (2) the directors approved of the underlying transaction. *See Brehm*, 746 A.2d at 257 n. 34; *Aronson*, 473 A.2d at

817-18; *Kohls*, 791 A.2d at 779.

### 2. Oversight liability under *Rales* test

Under the *Rales* test, a shareholder may also attempt to raise a reasonable doubt that a majority of the directors (or in the case of an even number of directors, exactly half) are disinterested and independent by asserting that the directors face a substantial likelihood of liability that renders them personally interested in the outcome of the decision on whether to pursue the claims asserted in the petition. *See Stone*, 911 A.2d at 367; *Forsythe v. ESC Fund Mgmt. Co.*, No. 1091-VCL, 2007 WL 2982247, *6 (Del.Ch. Oct.9, 2007) (mem.op.); *see also InfoUSA* 2007 WL 2419611 at *16 (if even number of directors show exactly half). For pre-suit demand purposes, directors have a disabling interest when the potential for liability is not a mere threat, but instead, may rise to a substantial likelihood. *Ryan v. Gifford*, 918 A.2d 341, 355 (Del.Ch. 2007). A shareholder may assert the directors face a substantial likelihood of liability because they failed to act in the face of a known duty to act, demonstrating a conscious disregard for their responsibilities and breaching their duty of loyalty by failing to discharge that fiduciary obligation in good faith. *See Stone*, 911 A.2d at 369. This is also known as "oversight liability." The necessary conditions predicate for director "oversight liability" are the directors: (1) utterly failed to implement any reporting or information system or controls; or (2) having implemented such a system or controls, consciously failed to monitor or oversee its operations, disabling themselves from being informed of the risks or problems requiring their attention. *Stone*, 911 A.2d at 370; *Forsythe*, 2007 WL 2982247 at *6. In either situation, imposition of liability requires a showing that the directors knew they were not discharging their fiduciary obligations. *Stone*, 911 A.2d at 370; *Forsythe*, 2007 WL 2982247 at *6.

### 3. Second part of *Aronson* test

If a court reviews a shareholder's claim of demand futility under the *Aronson* test and determines the petition does not allege, with particularity, facts from which the court could reasonably conclude that a majority of the directors in office, when the petition was filed, were disabled from impartially considering a demand, then the second part of the *Aronson* test should be analyzed. *See Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, *12, *22 (Del.Ch. May 9, 2006) (mem.op.). A shareholder seeking to demonstrate demand futility under the second part of the *Aronson* test must plead particularized facts sufficient to raise a reasonable doubt that: (1) the action was taken honestly and in good faith; or (2) the board was adequately informed in making the decision. *See Khanna*, 2006 WL 1388744 at *23. The court's inquiry in this context is predicated on concepts of gross negligence. *See Brehm*, 746 A.2d at 259; *Aronson*, 473 A.2d at 812; *Khanna*, 2006 WL 1388744 at *23. The court may not assume the transaction is a wrong against the corporation requiring corrective steps by the board. *Aronson*, 473 A.2d at 814. Rather, the alleged wrong is substantively reviewed against the factual background alleged in the complaint. *Id.*

### 4. McKim fails to satisfy both the *Aronson* and *Rales* tests

McKim fails to articulate whether he complains of an *affirmative* business decision or of a *failure* to make a business decision, or both. McKim complains generally about the actions of "controlling shareholders," but articulates little about direct actions of the board. Because McKim does not sufficiently challenge any particular business decision made by the board as a whole, other than by vague reference or in conclusory fashion, and because a majority of the

directors making any such decision are no longer on the board, the *Rales* test likely applies. However, Plaintiff's First Amended Petition will be examined under both tests.

McKim provides no director-by-director analysis.  He provides no ultimate or principal or elemental facts.  For example, McKim alleges that "Defendants breached their fiduciary duties by:

>...directing improper payments to Hays..."  However, McKim articulates no facts showing that any board member directed improper payments. Rather, it was McKim himself who authorized the payments.

* * *

>...making improper monetary gifts..."  However, McKim articulates no facts showing that any board member made improper monetary gifts.

* * *

>...approving wasteful and self-dealing transactions..."  However, McKim articulates no facts showing that any board member approved a wasteful or self-dealing transaction.

* * *

>...failing to operate in a diligent, honest and prudent manner..."  However, McKim articulates no facts showing that any board member failed to operate in a diligent, honest and prudent manner.

* * *

>...directing senior management to commit fraud..."  However, McKim articulates no facts showing that any board member directed senior

management to commit fraud.

* * *

...accepting and fraudulently accounting for monetary advances..." However, McKim articulates no facts showing that any board member accepted and fraudulently accounted for monetary advances.

* * *

...terminating and attempting to terminate senior management..." However, McKim articulates no facts showing that any board member terminated or attempted to terminate senior management.

McKim fails to overcome the presumption that the directors of DMH and DMT acted on an informed basis, in good faith, and in the honest belief that any complained-of actions were taken in the best interests of the corporation. McKim fails to plead with particularity. He fails to articulate facts that raise a reasonable doubt that a majority of the directors are disinterested an independent, or showing that the directors were incapable of considering a demand. For example, on October 13, 2008, when the Boards of Directors of DMH and DMT met to consider the written demand of shareholders FLI Deep Marine LLC, Bressner Trust and Harley Langberg, there were seven directors: Bruce Gilman, Larry Lenig, Paul McKim, Otto Candies III, Daniel Erickson, Eugene DePalma and Wade Abadie. This is apparently a critical date for McKim because he names as Defendants all directors existing on October 13, 2008, except himself. McKim fails to articulate facts showing that at least four of the directors serving on October 13, 2008, were not disinterested or independent. These directors are entitled to a presumption that they were faithful to their fiduciary duties. *Aronson*, 473 A.2d at 812. In the context of a presuit

demand, the burden is on the plaintiff in a derivative action to overcome that presumption. *Levine v. Smith*, 591 A.2d 194, 205-06 (Del. 1991). The court must determine whether a plaintiff has alleged particularized facts creating a reasonable doubt of a director's independence to rebut the presumption at the pleading stage. *Rales*, 634 A.2d at 934. Here, McKim has established no quantum of doubt. He fails to satisfy both the *Aronson* and the *Rales* tests for demand futility because he fails to articulate facts creating reasonable doubt that a majority of directors are disinterested and independent, or that any challenged transaction was otherwise the product of a valid exercise or business judgment, and fails to show that the board was incapable of considering a demand.

### d. The SLC investigated McKim's allegations

Consistent with its statutory right to manage a corporation, a board of directors may designate 1 or more committees. *See* 8 DEL. CODE § 141(c)(2) ("The board of directors may designate 1 or more committees, each committee to consist of 1 or more of the directors of the corporation.") Any such committee, to the extent provided in the resolution of the board of directors, or in the bylaws of the corporation, shall have and may exercise all of the powers and authority of the board of directors in the management of the business and affairs of the corporation. *See* 8 DEL. CODE § 141(c)(2). Here, confronted with a demand letter from shareholders FLI Deep Marine LLC, Bressner Trust and Harvey Langberg, the Boards of Directors of DMH and DMT formed a Special Litigation Committee to investigate (a) allegations set forth in the shareholder demand letter, (b) formal and informal allegations made by McKim and Thomas regarding DMH and DMT and their shareholders, and (c) the conduct of McKim and Thomas in their former roles as officers of DMH and DMT. The SLC retained the

undersigned independent outside counsel to investigate. The investigation commenced, and its scope included but was not limited to the matters contained in McKim's pleadings in this action. The fact that the SLC was formed and that the investigation commenced is proof that the board was capable of considering a demand. Special Counsel subsequently concluded their investigation and issued a final report, and, based substantially upon the findings in the report, the SLC recommended that the Boards of Directors of DMH and DMT take control of, and dismiss, this action.

The governing statutes give the independent and disinterested persons conducting the inquiry broad discretion in deciding what factors are appropriate for consideration under the circumstances. Their overriding concern is whether continuation of the derivative proceeding would be in the best interests of the corporation. As long as the proper persons are making the inquiry, their ultimate decision, as well as their method of arriving at it, is subject to review only for good faith and reasonableness, based on the factors considered appropriate by the independent and disinterested persons. *See* TEX. BUS. ORGS. CODE § 21.558(a); TEX. BUS. CORP. ACT art. 5.14(F). Once the independent and disinterested persons have completed their inquiry into the shareholder's allegations, they must decide whether it would be in the corporation's best interests to take the action demanded by the shareholder or to take some other suitable action. *See* TEX. BUS. ORGS. CODE § 21.558(a); TEX. BUS. CORP. ACT art. 5.14(F). If the answer is affirmative, the corporation may then bring suit against the proper defendants in its own name (or assume control of the ongoing litigation, if the shareholder has already commenced a derivative proceeding). At that point, the shareholder's right to institute or control the litigation ends. *See* REV. MODEL BUS. CORP. ACT § 7.42, Official Comment 4. Persons making the

inquiry fulfill their obligations by determining whether it is in the corporation's best interests to pursue the shareholder's demands. *See, e.g., Johnson v. Jackson Walker*, 247 S.W.3d 765, 775-777 (Tex. App.—Dallas 2008, pet filed) (independent person appointed to investigate shareholder's derivative suit made good faith and reasonable inquiry before recommending dismissal).

Where, as in this case, the corporation has made an inquiry into the shareholder's allegations, and the independent and disinterested investigators determine that the continuation of the derivative proceeding would not be in the corporation's best interests, and if an action has already been filed, the corporation may then move to dismiss the shareholder's derivative proceeding. TEX. BUS. ORGS. CODE § 21.558; TEX. BUS. CORP. ACT art. 5.14(F); *Zapata v. Maldonado*, 430 A.2d 779, 786 (Del. 1981) (committee can properly act for the corporation to move to dismiss derivative litigation that is believed to be detrimental to the corporation's best interests). If the court finds that the determination by independent persons was made in good faith, based on the factors that the independent persons considered appropriate under the circumstances, and that the inquiry was reasonable, dismissal is mandatory. TEX. BUS. ORGS. CODE § 21.558; TEX. BUS. CORP. ACT art. 5.14(F).

Here, the SLC was duly formed and appointed by the Boards of Directors of DMH and DMT, was composed of independent and disinterested members, made a reasonable and appropriate inquiry (through independent and disinterested counsel) into McKim's allegations, and having reviewed the findings in the final investigatory report, has determined that continuation of the derivative proceeding would not be in the best interests of DMH and DMT because (a) no evidence was found to support the allegations in the action, (b) there is no

likelihood of prevailing on any such action, and (c) the expense to the corporation would outweigh any possible recovery. The determination of the SLC is made in good faith and is based upon sound business judgment. The Boards of Directors of DMH and DMT met and passed a resolution adopting the recommendation of the SLC, and further authorized special counsel to prepare and file a motion to dismiss this action. The Boards of Directors of DMH and DMT promptly notified all shareholders (including McKim) of its determination to assume control of, and to dismiss, this action. Because the Boards of Directors of DMH and DMT have assumed control of this action, McKim no longer controls this action. McKim has the burden of proof to show that the requirements for dismissal have not been met. TEX. BUS. ORGS. CODE § 21.558(b)(1); TEX. BUS. CORP. ACT art. 5.14(F)(1), (2).

### e. The SLC seeks recovery of expenses

On termination of a derivative proceeding, the court may order the plaintiff to pay the expenses of the domestic or foreign corporation or any defendant incurred in investigating and defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose. TEX. BUS. ORGS. CODE § 21.561; TEX. BUS. CORP. ACT art. 5.14(J). Expenses are defined to include attorney's fees and costs in pursuing the investigation. *Id.* The SLC contends that this action was commenced and maintained by McKim without reasonable cause and for an improper purpose. The SLC therefore seeks recovery of expenses from McKim.

### Prayer

McKim was not authorized to commence this action, lacks standing to commence or maintain this action, and failed to satisfy the statutory demand requirement or the demand futility

exception.   On those bases, this action should be dismissed.   Additionally, the SLC has

determined in good faith, after conducting a reasonable inquiry and based on the factors the SLC

considered appropriate under the circumstances, that continuation of this action is detrimental

and not in the best interests of DMH and DMT.   Accordingly, the Boards of Directors of Deep

Marine Holdings Inc., a Delaware corporation, and its wholly-owned subsidiary Deep Marine

Technology Inc., a Texas corporation, have adopted a resolution to assume control of this action.

The SLC therefore prays that this court enter an order dismissing this action pursuant to TEX.

BUS. ORGS. CODE § 21.558 and TEX. BUS. CORP. ACT art. 5.14(F) and under Delaware

substantive law, and award the SLC its expenses.

Respectfully submitted,

K. B. Battaglini
Texas Bar No. 01918060
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
713.374.3552
713.754.7552 fax

Attorneys for the Special Litigation
Committee of the Boards of Directors of
Deep Marine Holdings Inc. and Deep
Marine Technology Inc.

### Certificate of Service

This will certify that a true and correct copy of the Amended Motion to Dismiss was served this 3rd day of August, 2009, by certified mail, return receipt requested, to the following known attorneys of record:

Casey T. Wallace
Sandy D. Hellums
HAYNES & BOONE LLP
One Houston Center
1221 McKinney Street, Suite 2100
Houston, Texas 77010

Geoffrey L. Harrison
Eric J. Mayer
Sammy Ford IV
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

Craig Smyser
SMYSER KAPLAN & VESELKA LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002

Robert P. Weinstine
David M. Aafedt
Joseph M. Windler
WINTHROP & WEINSTINE PA
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402

Matthew D. Orwig
SONNENSCHEIN NATH & ROSENTHAL LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201

Ralph A. Midkiff
CHAMBERLAIN HRDLICKA WHITE WILLIAMS & MARTIN
1200 Smith Street, 14th Floor
Houston, Texas 77002

Thomas J. Cortazzo
Jena W. Smith
Baldwin Haspel Burke & Mayer LLC
Energy Centre, 22nd Floor
1100 Poydras Street
New Orleans, Louisiana 70163


K. B. Battaglini

P.2
Dism X

NO. 2008-64385

| | | |
|---|---|---|
| PAUL MCKIM, Individually and Derivatively on behalf of Nominal Defendants Deep Marine Holdings Inc. and Deep Marine Technology Inc., | § § § § § § § | IN THE DISTRICT COURT OF |
| | § § | HARRIS COUNTY, TEXAS |
| Plaintiff, | § § § | |
| | § | 129th JUDICIAL DISTRICT |
| vs. | § § | |
| NASSER KAZEMINY, OTTO CANDIES JR., JOHN HUDGENS, DCC VENTURES LLC, OTTO CANDIES LLC, NJK HOLDING CORPORATION, OTTO CANDIES III, JOHN ELLINGBOE, DANIEL ERICKSON, LARRY LENIG JR., BRUCE C. GILMAN, EUGENE DEPALMA, and WADE ABADIE JR., | § § § § § § § § § § § § § § § § | **FILED**<br>Loren Jackson<br>District Clerk<br><br>AUG 1 4 2009<br>Time: _8-14-09_<br>Harris County, Texas<br>By:_____<br>Deputy |
| Defendants, | § § | |
| DEEP MARINE HOLDINGS INC. and DEEP MARINE TECHNOLOGY INC., | § § § § § | |
| Nominal Defendants | § | |

### ORDER GRANTING THE AMENDED MOTION TO DISMISS

On this day, the Court considered the Amended Motion to Dismiss asserted by the Special Litigation Committee ("SLC") of the Board of Directors of Deep Marine Holdings Inc. ("DMH") and Deep Marine Technology Inc. ("DMT"), which was also joined by certain other Defendants. The Court also considered the Notice of Discontinuance asserted by Derivative Plaintiff Paul McKim which requests, in the alternative, that this Court approve the discontinuance of the derivative proceedings.

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation and/or alterations were
present at the time of filming

The Court FINDS that Derivative Plaintiff Paul McKim no longer has standing to pursue his claims derivatively on behalf of DMH and DMT because he is no longer a shareholder of DMH or DMT.  The Court also FINDS that the SLC lawfully assumed control of the derivative proceedings, and determined in good faith, after conducting a reasonable inquiry based on the factors the SLC considered appropriate under the circumstances, that the continuation of the action would be detrimental and not in the best interest of DMH and DMT.

Therefore, the Court hereby DENIES the Notice of Discontinuance and hereby GRANTS the Amended Motion to Dismiss.

The Court ORDERS that the derivative proceedings, and the claims asserted therein, brought on behalf of DMH and DMT by Derivative Plaintiff Paul McKim are hereby terminated and dismissed with prejudice.[1]  This Order does not dispose of Plaintiff Paul McKim's individual claims for wrongful discharge and quantum meruit against Defendant Nasser Kazeminy and Plaintiff Paul McKim's individual claim for tortious interference with existing contract against Defendant Otto Candies Jr.

The award of expenses in a derivative proceeding by a trial court is discretionary. *Pace v. Jordan*, 999 S.W.2d 615, 625-26 (Tex.App.—Houston [1st Dist.], 1999).  The SLC, and certain other Defendants, have failed to provide this Court with legally sufficient evidence to support the claim that the derivative proceedings maintained by Derivative Plaintiff Paul McKim were without reasonable cause or for an improper purpose.

Therefore, the Court DENIES the request of the SLC, and certain other Defendants, for an award of expenses, pursuant to the Amended Motion to Dismiss.

Signed August 14, 2009.

Michael Gomez
Judge Presiding

---

[1] The Court finds the termination of the derivative proceedings pursuant to the Amended Motion to Dismiss to be an adjudication on the merits based on the Court's finding that the SLC lawfully assumed control of derivative proceedings, concluded its investigation, and as a result moved to dismiss.