# EXHIBIT D

EFiled: Nov 3 2008 6:33PM EST
Transaction ID 22305886
Case No. 4138-

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FLI DEEP MARINE LLC and BRESSNER PARTNERS
LTD., Derivatively on behalf of                                      :
Deep Marine Holdings, Inc.
and Deep Marine Technology, Inc.,                                    :

               Plaintiffs,                       :

  -against-                                                         :   Civil Action No.

                                               VERIFIED
PAUL McKIM, DANIEL ERICKSON, FRANCIS                                 :   COMPLAINT
WADE ABADIE, OTTO CANDIES, III, EUGENE
DePALMA, LARRY LENIG, BRUCE GILMAN,                                  :
JOHN HUDGENS, in their Capacities as Officers
and Directors,                                                       :

NASSER KAZEMINY, NJK HOLDINGS                                        :
CORPORATION, DCC VENTURES, LLC,
OTTO CANDIES, LLC and OTTO CANDIES, JR.,                             :

               Defendants,                       :

DEEP MARINE HOLDINGS, INC. and                                      :
DEEP MARINE TECHNOLOGY, INC.,

               Nominal Defendants.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

As and for their Verified Complaint against the Defendants, Plaintiffs allege:

## NATURE OF THE ACTION

1.     This is shareholders' derivative action brought in the right, and for the

benefit of, Deep Marine Holdings, Inc. ("Deep Marine Holdings") and its wholly owned

subsidiary, Deep Marine Technology, Inc. ("Deep Marine Technology," together "DMT")

asserting claims against certain officers and directors of DMT and the controlling shareholders of

DMT for breach of fiduciary duty, corporate waste, misappropriation, fraud, gross negligence and mismanagement and unjust enrichment.

2.      Either intentionally, or through gross negligence and mismanagement, these officers and directors have aided or allowed DMT's Controlling Shareholders -- Defendants Nasser Kazeminy and Otto Candies, LLC ("Otto Candies") and entities or persons within their control or acting at their direction -- to exploit and loot the corporation for their own economic benefit and/or improper purposes.

3.      At Kazeminy's instruction, DMT has been used to disguise improper payments in 2007 of at least $75,000 to the wife of a United States Senator for no legitimate business purpose. In addition, outright gifts of DMT corporate cash have been made to a relative of Mr. Kazeminy.

4.      During the period August 2004 to present, DMT has been victimized by egregious self-dealing and corporate waste in its transactions with Otto Candies. DMT has paid millions of dollars to Otto Candies needlessly in connection with vessels DMT has leased, chartered and purchased from that entity.

5.      DMT has been looted for the personal gain of the Controlling Shareholders to the detriment of the minority stockholders and DMT.

6.      Defendants' actions have caused millions of dollars of damage to DMT and have impaired Plaintiffs' interests in the corporation and will continue, unless halted and remedied.

## THE PARTIES

### The Plaintiffs

7.     Plaintiff FLI Deep Marine LLC and Bressner Partners Ltd. are minority shareholders in Deep Marine Holdings.   Together they own more than 5% of Deep Marine Holdings and have owned those shares at all relevant times hereto.  Deep Marine Holdings owns all of the stock of Deep Marine Technology.  Plaintiffs bring this action derivatively on behalf of DMT and to recoup the losses they have suffered as a result of the wrongdoing pleaded herein.

### The Officer and Director Defendants

8.     According to DMT, Defendant Paul McKim is a member of the Board of Directors of DMT and was until recently, the Chief Executive Officer of DMT.

9.     According to DMT, Defendant Daniel Erickson was until mid-October 2008 a member of the Board of Directors of DMT.

10.     According to DMT, Defendant Francis Wade Abadie was until mid-October 2008 a member of the Board of Directors of DMT and is also an officer of DMT.

11.     According to DMT, Defendant Otto Candies, III was until mid-October 2008 a member of the Board of Directors of DMT.

12.     According to DMT, Defendant Eugene DePalma was until mid-October 2008 a member of the Board of Directors of DMT.

13.     According to DMT, Defendant Larry Lenig is a member of the Board of Directors of DMT.

14.     According to DMT, Defendant Bruce Gilman is a member of the Board of Directors of DMT and an officer of DMT.  On certain DMT documents, Defendant Gilman is listed as the Chairman of the Board.

15.     According to DMT, Defendant John Hudgens is the Chief Financial Officer of DMT.

16.     Together, Defendants McKim, Erickson, Abadie, Otto Candies, III, DePalma, Lenig, Gilman and Hudgens are referred to herein as the "Officer and Director Defendants."

**The Controlling Shareholder Defendants**

17.     Defendant Nasser Kazeminy, and entities he owns or controls are major shareholders of DMT.  Mr. Kazeminy refers to himself as the "Controlling Shareholder" in DMT.

18.     Defendant Otto Candies, LLC ("Otto Candies") and entities it controls are major shareholders of DMT.  On information and belief, Otto Candies, a Louisiana corporation, is a marine transportation company with its principal offices located at 17271 Hwy. 90, Des Allemandes, Louisiana, 70030-0025.

19.     On information and belief, Defendant Otto Candies, Jr. and Otto Candies, III own or control Otto Candies, LLC.

20.     On information and belief, Defendant NJK Holdings Corporation ("NJK Holdings") is a Minnesota corporation, owned and/or controlled by Defendant Nasser Kazeminy, with its principal offices located at 8500 Normandale Lake Boulevard, Minneapolis, Minnesota, 55437.

21.     On information and belief, Defendant DCC Ventures, LLC ("DCC Ventures") is a private investment company owned or controlled by Defendant Kazeminy with offices in Minneapolis, Minnesota.  On information and belief, DCC Ventures is a shareholder of DMT.

22.     On information and belief, at all times relevant hereto, Defendants Kazeminy, Otto Candies, Jr., NJK Holdings, DCC Ventures and Otto Candies, LLC dominated and controlled the company and used it for their own personal financial gain.  Further, on information and belief, Defendants Kazeminy, Otto Candies, Jr., NJK Holdings, DCC Ventures and Otto Candies, LLC directed and caused the Officer and Director Defendants to ignore corporate formalities and reasonable business practices.  On information and belief, the wrongdoing complained of herein was undertaken purely for the economic benefit of the Defendants Kazeminy, Otto Candies, Jr., NJK Holdings, DCC Ventures and Otto Candies, LLC, the Officer and Director Defendants, and that of their various friends and allies.

23.     Defendants Kazeminy, NJK Holdings, DCC Ventures, Otto Candies, Jr. and Otto Candies are referred to herein as the "Controlling Shareholder Defendants."

**The Nominal Defendant Corporations**

24.     On information and belief, Deep Marine Holdings is a Delaware corporation, with its principal offices located at 20411 Imperial Valley Drive, Houston, Texas, 77073.

25.     On information and belief, Deep Marine Technology, a Texas corporation, also has its principal offices located at 20411 Imperial Valley Drive, Houston, Texas, 77073.

26.     DMT is a company established in 2002 that provides comprehensive subsea services to the offshore oil and gas industries, with a significant presence in the Gulf of Mexico.

27.     DMT is dominated and controlled by DMT shareholders Nasser Kazeminy and Otto Candies, LLC (which, in turn is controlled by Defendants Otto Candies, Jr. and Otto Candies, III).

## DUTIES OF THE OFFICERS AND DIRECTORS OF DMT

28.     By reason of their positions as officers and directors, and their ability to control the business and corporate affairs of DMT, the Officer and Director Defendants owed DMT and its stockholders the fiduciary obligations of good faith, loyalty and due care.  The Officer and Director Defendants were required to use their utmost ability to control and manage DMT in a fair, just, honest and equitable manner.

29.     To discharge those duties, the Officer and Director Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls and financial affairs of DMT.  The Officer and Director Defendants were required to protect the interests of the shareholders and not act to the detriment of the company and its shareholders.

### GROSS MISUSE OF CORPORATE FUNDS AT DEFENDANT KAZEMINY'S DIRECTION FOR IMPROPER PAYMENTS TO SENATOR NORMAN COLEMAN'S WIFE

30.     Plaintiffs have been informed by a Confidential Source that in the spring of 2007, Defendant Kazeminy instructed DMT's then Chief Financial Officer, B.J. Thomas, and Chief Executive Officer, Defendant McKim, to have DMT send quarterly payments of $25,000 to Senator Norman Coleman of Minnesota.  Mr. Kazeminy stated to the Confidential Source: "We have to get some money to Senator Coleman" because the Senator "needs the money."

31.     News articles have reported that Defendant Kazeminy is a large donor to Senator Coleman's campaign and that the two men have vacationed together at Kazeminy's expense using Kazeminy's private plane in 2004 and 2005.

32.     News articles have reported that Kazeminy may have paid large bills for clothing purchases at Neiman Marcus in Minneapolis by Senator Coleman and his wife.

33.     According to the Confidential Source, both Thomas and McKim advised Defendant Kazeminy that such payments by DMT to Senator Coleman would be improper.  On information and belief, at that time both Mr. Thomas and Defendant McKim refused to make such payments for DMT.

34.     According to the Confidential Source, Defendant Kazeminy then directed that DMT make payments of $25,000 to an insurance agency in Minneapolis, Minnesota, Hays Companies ("Hays"). Hays employs Laurie Coleman, the wife of Senator Coleman.  According to the Confidential Source, the company conducts no business in Minnesota.  According to the Confidential Source, the company's insurance needs had been placed through Aon, a leading global insurance brokerage.  According to the Confidential Source, no person in management ever suggested that any problem existed with the services provided by Aon.  According to the Confidential Source, no person in management ever identified a problem or shortcoming with the company's insurance coverage or programs.

35.     On information and belief, in May 2007, pursuant to Mr. Kazeminy's instructions, DMT paid $25,000 to Hays purportedly for payment of "service fees".

36.     On information and belief, at Defendant Kazeminy's request, DMT made two subsequent payments of $25,000 each to Hays in September 2007.

37.     Invoices dated September 4, 2007 and December 3, 2007 from Hays addressed to Deep Marine Technology, Inc. each show a charge of $25,000 for "quarterly installment of service fee." (Those invoices are attached hereto as Exhibit A.)

38.     The record for "Hays" from DMT's Vendor Trial Balance database indicates that DMT received four invoices from Hays, each for $25,000, dated May 16, 2007, June 1, 2007, September 4, 2007 and December 3, 2007.  That record also reflects four DMT

checks, each for $25,000, made payable to Hays, dated May 16, 2007, September 10, 2007, September 14, 2007 and November 26, 2007. The fourth check may not have been cashed. (That record is attached hereto as Exhibit B.)

39.     According to the Confidential Source, the purported insurance policy placed by Hays does not exist and there was no valid business reason for a payment to Hays of any amount; Hays provided no services of any type to DMT. According to the Confidential Source, all of the company's insurance needs were in place, proper and appropriate, both prior to and during the time the payments to Hays were made.

40.     On information and belief, DMT, through its officers, falsified documents in order to make these payments appear to be legitimate corporate expenses.

41.     According to the Confidential Source, in 2008, DMT's new Chief Financial Officer, Defendant John Hudgens, instructed his controller to delete references to the Hays invoices from DMT's records in an apparent effort to cover up evidence of DMT's payments to Hays. DMT's record for Aged AP-Past Due-Summary reflects a past due balance of $25,000 owed to Hays. The Hays line is circled and underneath it a handwritten note provides: "Please pull this detail and delete per John Hudgens. AMC 8/19/08." Another handwritten note states: "Debit Adj. per John." (That record is attached hereto as Exhibit C.) Upon information and belief, this was done to hide the wrongdoing that Defendant Kazeminy had directed and that had been effected by certain of the Officer and Director Defendants.

42.     These fraudulent and grossly improper payments cost DMT at least $75,000 and brought absolutely no value to the company. Further, based on the facts disclosed by the Confidential Source, these payments expose the Company to serious potential criminal and civil liability. As such, they constitute at the very least corporate waste. Certain of the

Officer and Director Defendants should have prevented this wrongdoing or should not have participated in it or should have reported it to appropriate authorities promptly upon learning of it.

43.     On information and belief, at Defendant Kazeminy's instruction, DMT forced then Chief Financial Officer Thomas to resign.  This act, according to the Confidential Source, was based in part on Thomas' refusal to use DMT funds to pay Senator Coleman.

44.     On information and belief, also at Defendant Kazeminy's instruction, DMT terminated the employment of Defendant McKim as Chief Executive Officer of DMT.

**IMPROPER DMT PAYMENT TO MR. KAZEMINY'S FAMILY MEMBER**

45.     On or about August 12, 2008, DMT issued a check to Behnaz Ghaufouri, a relative of Defendant Kazeminy for $6,000, purportedly for services rendered to DMT.  The check was signed by DMT's Chief Financial Officer John Hudgens.  (A copy of the cancelled check is attached hereto as Exhibit D.)

46.     According to the Confidential Source, Ms. Ghaufouri never worked for the company in any capacity.  According to the Confidential Source, Ms. Ghaufouri never provided services of any type to DMT.  The payment made by the company to Ms. Ghaufouri, through the actions of certain of the Officer and Director Defendants, served no legitimate business purpose.  In reality, this transaction was a gift of DMT's cash to a relative of Defendant Kazeminy and was wrong.

**CORPORATE LOOTING BY DEFENDANT OTTO CANDIES FOR ITS VESSELS**

47.     DMT regularly does business with Otto Candies, which supplies vessels for DMT's subsea projects.  Due to Otto Candies' control over the Officer and Directors

Defendants, DMT has not conducted arms-length transactions with Otto Candies. As a result, DMT has overpaid consistently for using and buying Otto Candies' vessels.

48.     According to the Confidential Source, in or about May 2007, Otto Candies' undue influence on the Officer and Director Defendants caused DMT to pay (and waste) $6 million above the agreed price to purchase the vessel Emerald, simply because Otto Candies demanded that amount at the closing of the sale transaction. This arbitrary hold-up was entirely one sided in Otto Candies' favor. DMT did not receive consideration for its payment to Otto Candies of the additional $6 million.

49.     According to the Confidential Source, during 2006, 2007 and 2008, Otto Candies repeatedly misrepresented the state of its vessels and then charged DMT hundreds of thousands of dollars to lease and charter vessels which were broken, poorly built or not able to meet US Coast Guard regulations, and for crews which were not provided at the last minute. The Otto Candies vessels at issue were not delivered to DMT as agreed, and needed hundreds of thousands of dollars worth of work and many months to be ready for operation for DMT's needs. This forced DMT to pay to repair the defective vessels that Otto Candies had off-loaded onto it. In addition, DMT lost valuable contracts with its customers and millions of dollars in revenue as a result of the substantial deficiencies in the Otto Candies vessels and the time delays involved in fixing those vessels. Otto Candies unreasonably left vessels promised to DMT in dry dock for months while DMT waited. Yet, DMT continued to pay above-market rates for substandard and broken vessels simply because Otto Candies was on both sides of the deals.

50.     DMT contracted with Otto Candies for and paid for a new crane. Otto Candies actually delivered a used crane that was not operable. On information and belief, Otto Candies delivered the new crane, promised to DMT, to a DMT competitor.

51.     These transactions all involved self-dealing by Otto Candies which the Officer and Director Defendants countenanced and aided.  Otto Candies, Otto Candies, Jr. and Otto Candies, III acted to enrich itself and themselves at the expense of the corporation.

52.     The Officer and Director Defendants failed to exercise ordinary diligence in evaluating DMT's transactions with Otto Candies and failed to use outside experts or consultants to assist them in valuing such transactions.

53.     These improper transactions cost DMT millions of dollars in wasted corporate assets.

## DMT'S UTTER FAILURE TO FOLLOW REQUIRED CORPORATE FORMALITIES

54.     DMT, acting through the Officer and Director Defendants, consistently has failed to follow Delaware or Texas corporate law requirements as to board meetings, appointment or election of directors, record-keeping and notices of actions taken by written consent.

55.     DMT's corporate filings both in the State of Texas and in the State of Delaware are inconsistent with each other as to the names and titles of the members of the beneficial owners of DMT, the members of the Board of Directors and the officers of the company.  These filings are also inconsistent with DMT memoranda from Defendant Kazeminy and material on the DMT website as to the officers and directors of DMT.

56.     For example, a September 8, 2008 press release on the DMT website states that Defendant Bruce Gilman has served as Chairman of the Board of DMT for several years; however, a DMT memorandum from Defendant Kazeminy to all DMT employees stated in July 2008 that Defendant Paul McKim had been promoted to the position of Chairman of the Board.  (Compare Exhibit E attached hereto with Exhibit F attached hereto.)

11

57.     Certain DMT filings as well as internal DMT documents reflect that Defendant McKim is the current Chief Executive Officer of DMT while other DMT documents state that he no longer has that title but remains as a Director of the company.

58.     Prior to October 2008, Defendants Gilman, McKim, Lenig and Erickson and Mr. John Ellingboe held themselves out as the directors of DMT (the "Pre-October Board").

59.     On information and belief, in early to mid-October 2008, Defendant John Hudgens alone, acting for Deep Marine Holdings, purportedly appointed Defendants Erickson, DePalma, Abadie and Otto Candies, III to the Deep Marine Technology Board of Directors, joining Defendants Gilman, Lenig and McKim, purportedly already on the Board of Directors. (These seven individuals are referred to herein as the "Mid-October Board.")

60.     Plaintiffs do not believe that the Mid-October Board members were put on the Board properly.

61.     Plaintiffs learned on or about October 18, 2008, and after the time they delivered a Demand to the Company that Defendants Erickson, Abadie, Otto Candies, III and DePalma of the October Board had suddenly resigned from the DMT Board of Directors.  Thus, according to DMT, the DMT Board now consists of only Defendants McKim, Gilman and Lenig (the "Late October Board.")

62.     Plaintiffs have never received notices pertaining to any of the elections, appointments or resignations of the various members of the Pre-October Board, the Mid-October Board or the Late October Board of Directors of DMT.

63.     It is unclear who the legal members of the Board of Directors and the officers of DMT actually are.

64.    In addition, minority shareholders were not made aware of the real facts concerning the Otto Candies transactions described above.

65.    By consistently operating outside the rules of corporate law as to corporate governance, record-keeping and notices, the Officer and Director Defendants have breached their duties to the company.

## GROSS MISMANAGEMENT OF DMT

66.    The lack of legitimate corporate governance at DMT has furthered the interests of the Controlling Shareholder Defendants in running DMT according to their own agenda to the detriment of the company.

67.    At all relevant times, the Officer and Director Defendants did not act in good faith in the interests of DMT and acted in reckless disregard of their duties as officers and directors of DMT.

## DEMAND ON THE DMT BOARD OF DIRECTORS

68.    On October 10, 2008, Plaintiffs sent a shareholder demand letter (the "Demand Letter") to the five individuals purportedly on the Pre-October Board of DMT: Defendants Gilman, McKim, Lenig and Erickson and Mr. John Ellingboe. (A copy of the Demand Letter is attached hereto as Exhibit G.)  In that letter, plaintiffs demanded that the Board: A) investigate the wrongdoing alleged herein; B) take action to end all fraudulent activities; C) bring actions to recover funds wrongfully diverted from DMT and for compensatory damages; and D) establish procedures to ensure that similar wrongdoing would not occur in the future.  Plaintiffs also asked for an assurance that DMT would take steps to preserve documents and guard against destruction or spoliation of evidence.

69.    On October 13, 2008, in response to Plaintiffs' Demand Letter, DMT stated that it had established a Special Litigation Committee to investigate the allegations raised in the Demand Letter.

70.    At that time, DMT represented to Plaintiffs that the members of the DMT Board were: Defendants McKim, Erickson, Abadie, Candies, DePalma, Lenig and Gilman, the Mid-October Board.

71.    On information and belief, all of the purported members of the DMT Mid-October Board received and reviewed the Demand Letter.

72.    Plaintiffs learned on or about October 13, 2008 that the members of the DMT Special Litigation Committee were Defendants Gilman and Lenig.

73.    Plaintiffs learned on or about October 18, 2008 that after reviewing the Demand Letter, four members of the DMT Mid-October Board of Directors resigned, leaving the three members of the Late October Board.

74.    Neither the DMT Board nor the Special Litigation Committee has taken the steps Plaintiffs demanded in the Demand Letter.

75.    The Special Litigation Committee has not provided a written refutation of the claims made in the Demand Letter.

76.    To date, the Special Litigation Committee has refused to assure Plaintiffs in writing that it has taken steps to preserve documents and records and caution all of the DMT employees and Board members against spoliation of evidence.  This is particularly troubling because of the evidence of deletion of DMT records concerning the payments to Hays, which Plaintiffs raised in the Demand Letter.

14

77.     Although Plaintiffs made a demand on the DMT Board as described above and then communicated with counsel for the DMT Special Committee to achieve the goals of this action, such demand and any expectation of reasonable action from the DMT Special Litigation Committee is futile because the Board members (on any of the Pre-October Board, the Mid-October Board or the Late October Board), and both of the members of the Special Litigation Committee, are not disinterested in the issues alleged here.  These individuals are beholden to the Controlling Shareholders and as such, they are not capable of conducting an independent and disinterested investigation; nor are they capable of making an independent and disinterested decision to initiate and vigorously prosecute this action on behalf of DMT.

78.     All of the members and recent former members of the DMT Board are either beholden to or controlled by the Controlling Shareholder Defendants.

79.     Defendant Paul McKim, as former Chief Executive Officer and current member of the Board of Directors, is beholden to the Controlling Shareholder Defendants, and to other Officer and Director Defendants, for a severance package in connection with the termination of his employment.   On information and belief, Defendant McKim has made demands upon the company, the Controlling Shareholders and certain Officer and Director Defendants that he be granted such a severance package.  In addition, many of Defendant McKim's actions and omissions are factually at the heart of the improper payments to Hays made at the behest of Defendant Kazeminy and at the self-dealing engaged in by Otto Candies. Therefore, Defendant McKim cannot be objective or disinterested in any investigation of the issues alleged herein.

80.     On information and belief, Defendant Erickson is a long time business associate of Defendant Kazeminy and works or used to work at Kazeminy's company, NJK Holdings.  Defendant Kazeminy hand-picked Mr. Erickson for the Board.

81.     On information and belief, Defendant Abadie is a current officer of DMT and as such is beholden to the Controlling Shareholder Defendants for his livelihood.

82.     On information and belief, Defendant Otto Candies, III owns or controls Otto Candies, LLC, an entity at the center of the allegations herein.  Therefore, Defendant Otto Candies, III cannot be disinterested in an investigation of these allegations.

83.     On information and belief, Defendant DePalma is a business associate of Defendant Kazeminy and works for or used to work at NJK Holdings, Mr. Kazeminy's company.

84.     On information and belief, Defendant Gilman is an officer of DMT and as such, is beholden to the Controlling shareholders for his continued employment.  In addition, Mr. Gilman is the recipient of certain DMT options which could be impacted by the outcome of this action.

85.     On information and belief, Defendant Lenig works for a company that manages property for Defendant Kazeminy; he is therefore beholden to Mr. Kazeminy.  Mr. Lenig is a long-term business associate of Mr. Kazeminy and was hand-picked by Mr. Kazeminy to sit on the DMT Board.

86.     As is described above, the two members of the Special Litigation Committee, Defendants Gilman and Lenig, are closely aligned with and beholden to Defendant Kazeminy and are not disinterested or independent directors.

87.     The now current Late October Board members, Defendants Gilman, Lenig and McKim, as a subset of the Mid-October Board, are not disinterested or independent directors.

88.     Demand on the Board was futile, as evidenced by the individuals the Board placed on the Special Litigation Committee.  Accordingly, demand should be excused in this instance as futile.

## FIRST CAUSE OF ACTION
### (Claim Against the Officer and Director
### Defendants for Breaches of Their Fiduciary Duties)

89.     Plaintiffs incorporate herein by reference paragraphs 1 through 88 of this Complaint as if set forth herein.

90.     The foregoing actions by the Officer and Director Defendants in aiding and approving DMT actions for the private purposes of the Controlling Shareholder Defendants were without merit, served no legitimate business purpose and were not in the best interests of DMT and its shareholders.  These actions were taken to enrich the Controlling Shareholder Defendants at great expense to DMT and its minority shareholders.

91.     By these actions, the Officer and Director Defendants breached their fiduciary duties of care, loyalty and good faith to DMT and its shareholders.

92.     As a result of the Officer and Director Defendants' breaches of their fiduciary duties, DMT has suffered injury and damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
### (Claim Against the Officer and Director
### Defendants for Waste of Corporate Assets)

93.     Plaintiffs incorporate herein by reference paragraphs 1 through 92 of this Complaint as if set forth herein.

94.     The Officer and Director Defendants allowed the Controlling Shareholder Defendants to divert millions of dollars in corporate assets for their own purposes and to their own entities.

95.     By these actions the Officer and Director Defendants wasted millions of dollars of corporate assets, causing injury to DMT and its minority shareholders and making them liable for damages in an amount to be proved at trial.

### THIRD CAUSE OF ACTION
### (Claim Against the Officer and Director Defendants for Negligence and Gross Mismanagement of DMT)

96.     Plaintiffs incorporate herein by reference paragraphs 1 through 95 of this Complaint as if set forth herein.

97.     The foregoing actions constitute negligence and/or gross mismanagement of DMT by the Officer and Director Defendants.

98.     By this negligence and gross mismanagement, the Officer and Director Defendants have injured DMT and its minority shareholders and caused them to suffer injury and damages in an amount to be proved at trial.

### FOURTH CAUSE OF ACTION
### (Claim Against the Controlling Shareholder Defendants for Unjust Enrichment)

99.     Plaintiffs incorporate herein by reference paragraphs 1 through 98 of this Complaint as if set forth herein.

100.    By reason of the actions described above, the Controlling Shareholder Defendants have been unjustly enriched with DMT's corporate assets.

### FIFTH CAUSE OF ACTION
### (Claim Against the Officer and
### Director Defendants for Fraud)

101.    Plaintiffs incorporate herein by reference paragraphs 1 through 100 of this Complaint as if set forth herein.

102.    The foregoing actions constitute fraud by the Officer and Director Defendants.

103.    By this, the Officer and Director Defendants have injured DMT and its minority shareholders and caused them to suffer injury and damages in an amount to be proved at trial.

### SIXTH CAUSE OF ACTION
### (Claim Against the Controlling
### Shareholder Kazeminy for Misappropriation)

104.    Plaintiffs incorporate herein by reference paragraphs 1 through 103 of this Complaint as if set forth herein.

105.    The foregoing actions constitute misappropriation of the company's assets by Defendant Kazeminy.

106.    By this, Defendant Kazeminy has injured DMT and its minority shareholders and caused them to suffer injury and damages in an amount to be proved at trial.

WHEREFORE, Plaintiffs respectfully request that the Court grant them the following relief:

    a)  Declaring that the Officer and Director Defendants have breached their fiduciary duties to DMT and that the actions described herein constitute gross mismanagement and waste of corporate assets;

    b)  Enjoining the Officer and Director Defendants from allowing any further self-dealing or unjust enrichment by the Controlling Shareholder Defendants;

c)  Awarding damages to compensate DMT for the losses it has suffered caused by the Officer and Director Defendants' negligence, fraud, breaches of their duties and wasting of corporate assets;

d)  Ordering that any unjust enrichment of or misappropriation by the Controlling Shareholders be paid back to DMT;

e)  Ordering that DMT conduct legal elections or appointments of its directors according to Delaware corporate law;

f)  Awarding to Plaintiffs their reasonable attorneys' fees, experts' fees, costs and disbursements; and

g)  Such other and further relief as the Court deems just and proper.

Dated:   November 3, 2008

Respectfully submitted,

/s/ Laurie Schenker Polleck
Laurie Schenker Polleck (No. 4300)
Steven R. Schlesinger
913 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 351-8000
(302) 351-8010

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

*Special Counsel for Plaintiffs*