IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| DEEP MARINE HOLDINGS, INC. et al. | § § § § § | Case No. 09-39313<br><br>Jointly Administered Chapter 11 |
| Debtors. | § | |

| | | |
|---|---|---|
| DEEP MARINE HOLDINGS, INC., and DEEP MARINE TECHNOLOGY INCORPORATED | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Adversary No. 10-3026 |
| FLI DEEP MARINE LLC, BRESSNER PARTNERS, LTD., LOGAN LANGBERG, HARLEY LANGBERG, and DEEPWORK, INC. | § § § § § § | **ORAL ARGUMENT REQUESTED** |
| Defendants. | | |

**MOTION OF DEFENDANTS FLI DEEP MARINE LLC,
BRESSNER PARTNERS LTD., LOGAN LANGBERG AND
<u>HARLEY LANGBERG TO COMPEL THE PRODUCTION OF DOCUMENTS</u>**

Defendants Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg ("Defendants") hereby move for an order compelling Plaintiffs Deep Marine Holdings, Inc. and Deep Marine Technology Incorporated (together, "Debtors" or "Plaintiffs") to immediately produce to Defendants, on an expedited

basis, the documents first requested on January 22, 2010 and attached to the Affidavit of Anthony Paduano, sworn to on January 26, 2010 and submitted herewith (the "Paduano Aff.") as Exhibit B. In the alternative, Defendants move for an order compelling Plaintiffs to immediately produce the proposed compromise request for production that was sent to Plaintiffs on January 26, 2010 and that is attached to the Paduano Aff. as Exhibit G. Defendants further move pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure and Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure for the expenses incurred – including attorney's fees – in connection with making this Motion. Defendants have conferred with Plaintiffs in good faith prior to making this Motion, in an effort to obtain the documents without Court action. All attempts to resolve this issue without involving the Court were unsuccessful. Defendants also request oral argument on this motion.

Plaintiffs have refused to produce any documents to Defendants and have consented to only very limited questioning of the Debtors' chief restructuring officer in deposition. Plaintiffs' position is completely unreasonable, and contrary to the letter and spirit of the Court's statements on this matter. The grounds for the motion to compel the production of documents are fully set forth below:

**Defendants Are Entitled to Take the Noticed Discovery**

1. Discovery is available pursuant to Rule 30(a) of the Federal Rules of Civil Procedure and is often available in cases where preliminary relief is sought. See Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies

2

Limited, 1994 WL 719696 (S.D.N.Y. 1994) "Courts have wide discretion with respect to discovery and Federal Rule of Civil Procedure 34(b) expressly provides that courts may expedite discovery." Ellsworth Associates, Inc. v. U.S., 917 F. Supp. 841, 844 (D.D.C. 1996). "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." Id.   See also Entertainment Technology Corp. v. Walt Disney Imagineering, 2003 WL 22519440, 3 (E.D.Pa. October 2, 2003); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. S. Zimmerman, 1996 WL 707107, 3 - 4 (D. Kan. October 1, 1996) (granting leave to commence discovery in aid of a preliminary injunction hearing)

2.   The issue here is whether the ownership of certain claims asserted by Defendants lies with Defendants or with the Debtors.  Defendants are entitled to take the discovery necessary to prove that some of the claims are owned by Defendants, not the Debtors, or to disprove Plaintiffs' assertions that all the claims are property of the Debtors.  For example, under Delaware law, controlling shareholders owe a fiduciary duty to minority shareholders.  This is separate and apart from any duties owed to, or by, a corporation.  In order to determine whether specific actions taken by the controlling shareholders – who were also directors of the Debtors – were arguably breaches of duties owed by the controlling shareholders **as individuals** to Defendants (i.e., that they are claims that are owned by Defendants), it is necessary to have a clear picture of the context for those actions.  Defendants are entitled to review any documents that would help them

3

prove that case, even, as this Court previously recognized, if the discovery seems to be broader than Plaintiffs think necessary to prove ownership of the claims.

**Plaintiffs Avoid Discovery in the Delaware Action**

3.  On October 26, 2009, Defendants filed a Complaint in Delaware Chancery Court, based on, among other things, breaches of fiduciary duties owed to Defendants, former minority shareholders of the Debtors, by some of the then-current and former officers, directors, and controlling shareholders of the Debtors (the "Delaware Action").

4.  On November 2, 2009, counsel for Plaintiffs and Defendants met in Delaware Chancery Court Vice Chancellor Strine's conference room to discuss the expedited discovery requested by Plaintiffs. The Court granted the expedited discovery, but declined to set a timeframe for such discovery, stating that "I've ordered the discovery to go forward and it's going to go forward. If people are obstinate, they will – you can file a motion." In response, counsel for controlling shareholder Nasser Kazeminy[1] stated that "[w]e're in Delaware. We're in Chancery Court. Everyone is going to work cooperatively." Yet more than two months passed between the Chancery Court's order and this Court's issuance of the temporary restraining order, and still the defendants in the Delaware Action have not produced even one piece of paper in response to Defendants' document requests and the Chancery Court's order.

---

[1] Mr. Kazeminy is the controlling shareholder of the Debtors, and served as a director at the time of the bankruptcy filing. Through his controlling stake in DCC Ventures, LLC and NJK Holdings Corporation, Mr. Kazeminy is also the Debtors' second-largest creditor.

4

**The Commencement of the Adversary Proceeding and TRO Hearing**

5. On January 19, 2010, Plaintiffs filed the Original Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction in this Court.

6. On January 22, 2010, the Court held a hearing on Plaintiffs' application for a temporary restraining order staying all proceedings in the Delaware Action.

7. The Court granted the temporary restraining order, but stated that in preparation for the preliminary injunction hearing on February 8, 2010, Defendants were "entitled to *all the discovery that you - all can notice up and get done*. If you want me to compel some right now, I'd probably prefer that you - all *confer first and if you don't reach an agreement, file a Motion to Compel and I'll get discovery*." (emphasis added) (Transcript at 49, lines 16-20)

8. Although the Court stated that any discovery would "have to be connection with the merits of the preliminary injunction that's being sought," (Transcript at 50, lines 1-2) the Court did acknowledge that "there may be things that are broader than who owns the claims." (Transcript at 50, lines 6-8)

9. Defendants did in fact attempt to reach an agreement with Plaintiffs, to no avail.

5

**Plaintiffs Refuse to Agree to Meaningful Discovery**

10. Pursuant to the instructions of the Court, Rules 7030 and 7034 of the Federal Rules of Bankruptcy Procedure and Rules 30 and 34 of the Federal Rules of Civil Procedure, Defendants requested the deposition of the Plaintiffs' Chief Restructuring Officer (the "CRO"), as well as such document production as is necessary for Defendants to rebut Plaintiffs' claims. Defendants also conferred with Plaintiffs on multiple occasions, regarding the deposition of the CRO and the scope of the document production. (See Paduano Aff. ¶¶ 7, 8, 10, 11, 12, and 13)

11. Although Plaintiffs have shown some willingness to make the CRO available for deposition on limited topics[2], the CRO has been associated with the Plaintiffs for about a month. There is simply no way that the CRO has much relevant information regarding the ownership of the claims, and therefore his deposition – while important – is not sufficient for Defendants to prepare for the upcoming preliminary injunction hearing.

12. Plaintiffs have not, however, demonstrated a willingness to work things out with Defendants regarding the document requests. From the time of the Court's Order on January 22, 2010 until just prior to the filing of this Motion, Defendants attempted to confer with Plaintiffs on the scope of discovery. On the

---

[2] In an email dated January 26, 2010 at 12:22 a.m., counsel for Plaintiffs agreed to produce John Bittner, the CRO, on an extremely limited basis. "We can envision questions related to the independence and wherewithal of the Debtors to prosecute the Delaware Causes of Action that could relate to element 3 above, and we will produce John Bittner for deposition on such matters (and only such matters or such other matters that are relevant as provided above) on February 3, 2010, at our offices in Houston." (See Exhibit E to the Paduano Aff.) While it is doubtful Mr. Bittner has much more relevant information, Defendants should not be limited to only those topics that Plaintiffs' counsel thinks are appropriate.

morning of January 25, 2010, Plaintiffs and Defendants participated in a conference call discussion regarding Plaintiffs' concerns about the discovery requests. At the end of that call, counsel for Plaintiffs and Defendants agreed to reconvene later that day to discuss some of the specific objections to the document requests, and ways to address any such objections. Instead, later that day, counsel for Plaintiffs informed Defendants that a further phone call would not be necessary. (See Paduano Aff. ¶ 10)

13. Hours later, on January 26, 2010 at 12:22 a.m., counsel for Defendants sent an email to counsel for Plaintiffs, informing them that Plaintiffs "do not intend to respond to the RFPs and plan to object to same." (See Paduano Aff. ¶ 11) This was followed by an email from Debtors' counsel at 1:49 p.m. on January 26, informing Defendants that Plaintiffs would be filing a motion for protective order that same day, to be heard at a hearing the very next day. (See Paduano Aff. ¶ 12)

14. As is discussed in the Paduano Aff., at 4:09 p.m. Eastern time, Defendants sent a revised request for document production to Plaintiffs, in the hopes of coming to an agreement without the need of involving the Court. (See Paduano Aff. ¶ 13) As of the time this Motion was filed, Defendants had not yet received a response to their proposal.

15. Plaintiffs' refusal to produce any documents and only very limited deposition of the CRO is completely unreasonable, and contrary to the letter and spirit of the Court's statements on this matter.

7

**Plaintiffs Further Obstruct Discovery by**
**Insisting on an Inappropriate Confidentiality Stipulation**

16. Counsel for Plaintiffs indicated that even if they were to agree to produce some documents to Defendants, they would only do so with a confidentiality stipulation in place. Counsel further indicated that such confidentiality stipulation would be provided by Greenberg Traurig, counsel for the Plaintiffs in the Delaware Action (and counsel for the "Special Committee" in the Delaware Derivative Action), and would be essentially identical to the draft confidentiality stipulation offered by the Debtors (represented by Greenberg Traurig) in the Delaware Action. (See Paduano Aff. ¶ 8) The confidentiality stipulation proposed by the Debtors in the Delaware Action was obstructive, but was at least consistent with the Debtors' efforts to subvert the discovery process, because the individuals running the Debtors were accused of serious wrongdoing and were trying to prevent any discovery from taking place. In the context of this adversary action, proposing the same confidentiality stipulation is not only obstructive, it is also is unfathomable. The insiders who were previously running the Debtors are purportedly no longer involved with the running of the Debtors. Yet the Debtors continue to maintain the same hostile attitude toward producing any discovery. It also seriously calls into question the purported independence of those currently managing the Debtors.

17. In the Delaware Action, the Chancery Court had ordered expedited discovery on November 2, 2009. Plaintiffs, along with the non-bankrupt individuals and entities that are defendants in the (now stayed) Delaware Action

8

and have therefore benefited greatly from this Court's temporary restraining order, ignored the Chancery Court's order, and did not provide even one page of documents to Defendants in the more than two months between the Chancery Court's order and this Courts temporary restraining order. When Plaintiffs could not outright ignore the order any more, they switched gears and insisted on an unreasonable confidentiality stipulation with a stringent "attorneys eyes only" designation that would have prevented the Defendants from viewing almost any relevant document and effectively assisting in the prosecution of their claims. Defendants could obviously not agree to such terms. Defendants were in the process of litigating that issue in Delaware when the Plaintiffs filed for bankruptcy and the Court issued its stay.

18. The continued presence in this case of Greenberg Traurig, which represented Plaintiffs in the Delaware Action and the "Special Committee" in the Delaware Derivative Action, seriously calls into question the independence of the professionals currently representing Plaintiffs.

**Absent a Court Order, Plaintiffs' Maneuvering
<u>Will Likely Prevent Defendants From Obtaining Adequate Discovery</u>**

19. It is clear based on the last year or so of maneuvering by Plaintiffs, that it will take an explicit order from this Court in order to get any document discovery from Plaintiffs.

20. It will be even more difficult to obtain discovery from the individuals over whom this Court may not have jurisdiction. Nasser Kazeminy and Otto Candies, III were, as recently as December 17, 2009, the sole members of the

Debtors' Boards of Directors. They also are the Plaintiffs' controlling shareholders and largest creditors. Francis Wade Abadie was until recently the President and Chief Operating Officer of Plaintiffs and now has some sort of consulting arrangement with the Plaintiffs. On the January 25, 2010 call, Mr. Abadie's attorney was present but would not agree to accept a subpoena on behalf of Mr. Abadie or to make any other comment regarding discovery. John Hudgens, was until recently the Chief Financial Officer of Plaintiffs and now apparently has a similar consulting arrangement to Mr. Abadie. All will undoubtedly argue that they are outside the jurisdiction of this Court and are likely to fight the subpoenas compelling their depositions. Again, based on past experience with these individuals, none are likely to ever produce any documents, at least in the two short weeks leading up to the preliminary injunction hearing. As the Vice Chancellor of the Delaware Chancery Court stated, these individuals are "slick." (Paduano Aff. ¶ 3) Counsel for the Debtors has claimed that these individuals are no longer employed by the Debtors and therefore she cannot agree to produce them for depositions.

21. In the absence of any documents or depositions from the former officers and directors of Plaintiffs, it is that much more important that Defendants are able to prepare their case from documents produced by Plaintiffs.

22. Defendants need – and are entitled to – document discovery so they can rebut Plaintiffs' assertions and show that the claims – or at least some of them – are direct claims against the non-bankrupt co-defendants in the Delaware Action.

10

In order to do so, Defendants necessarily must investigate some of the facts of the underlying case, such as various misrepresentations made by Mr. Kazeminy and Mr. Candies and the frauds perpetrated by them. The substantive facts determine the ownership of the claims, and Defendants cannot prove that some of the claims are rightfully theirs without access to some of the underlying facts. The Court acknowledged this when it stated that in discovery, "there may be things that are broader than who owns the claims." (Transcript at 50, lines 6-8)

23.     Defendants will be extremely prejudiced if they are not able to conduct adequate discovery prior to the preliminary injunction hearing. This Court has already stated that in the absence of any agreement between the parties, it would "get discovery." Defendants now respectfully request the Court require the immediate and expedited production of the requested documents to Defendants.

24.     Pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure and Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, a movant on a motion to compel is entitled to recover its reasonable expenses, including attorney's fees, "if the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed." Defendants respectfully request that upon the granting of this motion, or the production of documents by Plaintiffs, this Court grant Defendants their expenses incurred in making this motion.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court enter an Order compelling Plaintiffs to produce to Defendants the requested documents on an expedited basis and compelling Mr. Bittner, the CRO, to answer any deposition questions properly asked. Defendants further request that the Court enter an Order granting them the expenses incurred in making this motion.

Dated:   January 26, 2010

Respectfully submitted,

PADUANO & WEINTRAUB LLP

_____
Anthony Paduano
(*pro hac vice* admission pending)

1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
ap@pwlawyers.com

JASPAN SCHLESINGER LLP
913 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 351-8000

Attorneys for Defendants FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg