IN THE UNITED STATES BANKRUPTCY COURT
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| DEEP MARINE HOLDINGS, INC. et al. | § § § § § § | Case No. 09-39313<br><br>Jointly Administered Chapter 11 |
| Debtors. | | |

| | | |
|---|---|---|
| DEEP MARINE HOLDINGS, INC., and DEEP MARINE TECHNOLOGY INCORPORATED | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Adversary No. 10-3026 |
| FLI DEEP MARINE LLC, BRESSNER PARTNERS, LTD., LOGAN LANGBERG, HARLEY LANGBERG, and DEEPWORK, INC. | § § § § § § | |
| Defendants. | | |

## AFFIDAVIT OF ANTHONY PADUANO

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )

Anthony Paduano, being duly sworn, deposes and says:

1. I am admitted to practice law before the courts of the State of New York and my pro hac vice admission is pending before this Court. I am a member of Paduano & Weintraub LLP, counsel to the Defendants FLI Deep Marine LLC ("FLI") and Bressner Partners, Ltd., Logan Langberg and Harley Langberg (the "Defendants") in this action. I submit this Affidavit in support of Defendants' motion to compel the production of documents.

2. Through these bankruptcy proceedings, the Debtors are trying to divest the Delaware courts of jurisdiction over all the direct claims asserted by Defendants against non-bankrupt individuals and entities after the Delaware courts have spent more than one year on the case.

3. The Debtors are also continuing the games that they and their co-defendants played in the Delaware courts, attempting to avoid any discovery at all costs. It is because of such games that the Vice Chancellor of the Delaware Chancery Court called the Debtors "slick." (See Exhibit A, p. 15, lines 15 - 24)

4. On Friday, January 22, 2010, this Court heard arguments on Plaintiffs' application for a temporary restraining order (the "TRO"). The Court granted the TRO, but allowed Defendants to take discovery. A copy of the transcript from the TRO hearing (the "Transcript") is attached hereto as Exhibit B.

5. Specifically, the Court asserted that Defendants were "entitled to *all the discovery that you - all can notice up and get done*. If you want me to compel some right now, I'd probably prefer that you - all *confer first and if you*

*don't reach an agreement, file a Motion to Compel and I'll get discovery."* (emphasis added) (See Transcript at 49, lines 16-20)

6.  Shortly after the Court issued its Order on January 22, Defendants served deposition notices and requests for the production of documents on counsel for Plaintiffs. (See letter and attachments, attached hereto as Exhibit C)

7.  Counsel for Plaintiffs and Defendants traded several emails on January 22, 2010 regarding the scope of discovery and the scope of Bracewell & Giuliani LLP's representation of the Debtors. In those emails, counsel for Plaintiffs requested a conference call on Monday, January 25, 2010, to discuss any discovery issues. (See Exhibit D)

8.  On the morning of January 25, 2010, Plaintiffs and Defendants participated in a conference call discussion regarding Plaintiffs' concerns about the discovery requests. Plaintiffs took the position that Defendants' requests were overbroad, and that Plaintiffs would not produce documents and would only agree to allow the Debtors' chief restructuring officer to answer limited questions at deposition. Plaintiffs' counsel further indicated that even if documents were to be produced, they would only be produced pursuant to a confidentiality stipulation that was substantially similar to the aggressive and overbroad draft confidentiality stipulation that the Debtors and their co-defendants proposed in the Delaware Action. That confidentiality stipulation had been the subject of litigation in Delaware Chancery Court prior to the Court's issuance of its stay Order.

9. The parties were unable to resolve their difference on the conference call, but agreed to reconvene later in the day with some practical solutions for limiting the scope of discovery in a manner that would be acceptable to the Plaintiffs.

10. Instead, later that day, counsel for Plaintiffs informed Defendants via email that a further phone call would not be necessary. (See Exhibit E)

11. At 12:22 a.m. on Tuesday, January 26, 2010, counsel for Plaintiffs sent me an email that outlined her reasons for objecting to Defendants' discovery requests. (See Exhibit F) Although Plaintiffs' counsel stated that "[w]e are ready and willing to cooperate with any discovery related to the preliminary injunction," in the end counsel asserted that "we do not intend to respond to the RFPs and plan to object to same." (See Exhibit F)

12. On January 26, 2010 at 1:49 p.m., counsel for Plaintiffs informed Defendants via email that "the Debtors intend to file a motion for protective order related to the Defendants' first request for production this afternoon, and will request that the Court hear the motion at tomorrow's DMT omnibus hearing, scheduled for 3 p.m. Houston time." (See Exhibit G)

13. In the interest of working things out among the parties without requiring the involvement of the Court, we sent another letter to Plaintiffs' counsel via email on January 26, 2010, proposing a compromise document request that

addressed many – if not all – of Plaintiffs' concerns. (See Exhibit H)  As of the time I signed this Affidavit, Plaintiffs had still not yet responded to this proposal.

14.   As required by Rule 7037 of the Federal Rules of Bankruptcy Procedure and Rule 37 of the Federal Rules of Civil Procedure, Defendants have conferred with Plaintiffs in good faith prior to making the Motion to Compel, in an effort to obtain the documents without Court action.  All attempts to resolve this issue without involving the Court were unsuccessful.

_____
Anthony Paduano

Sworn to before me this
26th day of January, 2010

_____
Notary Public

JORDAN D. BECKER
Notary Public, State of New York
No. 60-5001832
Qualified in Westchester County
Commission Expires 9/14/10

5