IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | § | **Chapter 11** |
| § | § | **Jointly Administered Under** |
| **DEEP MARINE HOLDINGS, INC. et al.,** § | § | **Case No. 09-39313-H1-11** |
| Debtors. § | § | |
| § | | |
| **DEEP MARINE HOLDINGS, INC.,** § | § | |
| and **DEEP MARINE TECHNOLOGY** § | § | |
| **INCORPORATED** § | § | |
| Plaintiffs, § | § | |
| v. § | § | |
| § | § | **Adversary No. 10-03026** |
| **FLI DEEP MARINE LLC, BRESSNER** § | § | |
| **PARTNERS LTD., LOGAN LANGBERG** § | § | |
| **HARLEY LANGBERG, AND** § | § | |
| **DEEPWORK, INC.** § | § | |

**COMMITTEE'S LIMITED OBJECTION TO MOTION FOR CONTINUANCE**
(Refers to Docket #42)

The Official Committee of Unsecured Creditors (the "Committee") in the above referenced, jointly administered Chapter 11 cases (the "Cases"), files this Limited Objection to Defendants' Motion for Continuance, and would respectfully state as follows:

SUMMARY

1. There is no harm to the Defendants to denying their motion for a continuance, but there is real harm to the Estates. Defendants are free to request that the court vacate a preliminary injunction at any time. Fed. R. Civ. P. 65. However, if the continuance is granted, the Estates are prejudiced as the continued uncertainty makes it harder to reorganize the Debtors, the tight plan deadlines become more tenuous, and the resources of the Estates are wasted on time-consuming discovery and addressing novel legal theories of "direct claims" by the disgruntled former shareholders.

Austin 56349v1                                1

**Factual Background**

2. The Committee is a party in interest in this proceeding because 1) the funds of the estate are being expended to prosecute this suit; 2) the Defendants are seeking to control or use property of the estate and 3) the Defendants' continued pursuit of the case will interfere with an effective reorganization of the Debtors. Under Fifth Circuit Law, the Committee is a "person aggrieved" because the actions of this suit affect their pecuniary interest and the property of the estate. Moreover, 11 U.S.C. §1109(b) grants the Committee standing to appear and be heard on any issue.

3. The FLI Plaintiffs had sued the Debtors and their insiders prepetition for causes of action of which the Court can take judicial notice. The court is hereby requested to take judicial notice of the Docket and the Complaint (and attachments thereto) under Fed. R. Ev. 201. The Court is also requested to take judicial notice of the deadlines established in the DIP Loan in the main case, which require a plan to be filed by approximately March 15.

4. The Defendants took discovery.[1] It is they, not the Plaintiffs, who abused the discovery process by not limiting their interrogation to issues related to this proceeding and the preliminary injunction. The Court had admonished the Defendants to limit their inquiry. They did not. Rather, Defendants asked about the selling of insurance policies through insiders or affiliates -- the allegations forming the gravamen of the complaints that are the subject of the underlying derivative litigation. Defendants expended an absurd amount of time asking about the background, educational and experiential qualifications of the Debtors' CRO and professionals. Defendants asked extensive and probing questions about the Debtors' books and records and corporate formalities.

---

[1] The Committee counsel attended the depositions.

5.      All of these questions were interesting to the Committee, and may be useful for the pursuit of other litigation involving mismanagement of the Debtors. They were not, however, relevant to the present proceeding or "direct claims" by the Defendants. They were only occasionally objected to and, even more rarely, the subject of an instruction by Debtors counsel not to answer the question.

6.      If there was some error by the Debtors or their counsel it is that they allowed the Defendants to continually ask these questions and did not immediately suspend the depositions. The action of instructing a witness not to answer, while not the most technically correct option, was the least obstructionist option. It shows the Debtors attempt at good faith.

7.      Now, based on an unverified "emergency" pleading[2] the Defendants seek a continuance without balancing the harms of the Estates against the harm to Defendants. An analysis of those harms shows the Motion should be denied.

### Objection to the Motion

8.      The Court has the inherent power to control its own dockets and may entertain any motion at any time. This practice is confirmed by DLR 7.8, which states "The Court may in its discretion, on its own motion or upon application, entertain and decide any motion, shorten or extend time periods, and request or permit additional authority or supporting material."

9.      However, the Court should balance the relative harms in granting or denying the continuance. Here, the equities and harms favor denying the continuance.

10.     Implicitly, the Defendants are conceding that they will lose the Preliminary Injunction hearing if they are denied a continuance. However, this court may, at any time upon

---

[2] Under BLR 9013, emergency pleadings require a certification of counsel as to the emergency and perceived harm.

reasonable notice, dissolve a preliminary injunction for cause. Thus, there is no harm to denying the continuance, even if the result is that the Defendants lose on an interlocutory basis.

11.     Moreover, the Defendants are clearly capable of bringing the appropriate motions under Rule 37 and Fed. R. Bankr. P. 7037 to sanction the Debtors if they had, in fact, committed substantial abuse. Again, there is no harm to the Defendants.

12.     Contrast that lack of harm with the potential *significant* harm to the Estates that would result from granting the continuance to allow the Defendants to become extraordinarily creative in their pleading of the derivative claims. The estate will be burdened by additional legal research to answer novel claims brought by the Defendants. The tight deadlines for proposing a plan of reorganization are put at risk by the extensive "supersonic" discovery that has characterized the last week.

## The Court Could Enter an Injunction Even if "Direct Claims" Were Plead

13.     The Court could enjoin the Delaware Court proceedings under 11 U.S.C. § 105 because the Delaware suits will interfere with the Debtor's efforts to reorganize, even if a novel theory seeks a "direct claim".

14.     Section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."[3]  Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the debtor's assets.[4]

---

[3] 11 U.S.C. §105(a).

[4] *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy

15. Included among these equitable powers of section 105 is the ability of the Court to enjoin parties from pursuing lawsuits and proceedings against a non-debtor that threaten the debtor's estate by unduly interfering with the debtor's efforts to reorganize,[5] or where the proceeding sought to be enjoined will impair the bankruptcy court's jurisdiction over the estate.[6]

16. Here, the Delaware plaintiffs, even if they sue the former insiders under some novel "non-derivative" basis, should be enjoined pending the confirmation of the Plan.

---

Code."). *See also Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

[5] *SMF Realty Co. v. Consolini*, 903 F. Supp. 656, 662 (S.D.N.Y. 1995) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1992)) (stating that "courts may enjoin a suit against a nondebtor defendant if it would offer a plaintiff the means to make an 'end run' around the protection provided by the Code to the debtor"); *see also Fisher v. Apostolou*, 155 F.3d 876, 883 (7th Cir. 1998) (concluding that courts may enjoin suits which may affect the amount of property in the bankrupt estate); *In re Am. Film Tech., Inc.*, 175 B.R. 847, 850 (D. Del. 1994) (ruling that courts may enjoin suits that would have collateral estoppel implications for the debtor, such as when the nondebtor party shares an identity of interest with the debtor); *GAF v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 26 B.R. 405, 416 (Bankr. S.D.N.Y. 1983) (declaring that courts may enjoin all actions "necessary and appropriate" to achieve the goals of a Chapter 11 reorganization), *aff'd*, 40 B.R. 219, 225-26 (S.D.N.Y. 1984) (concluding that courts may enjoin "actions excepted from the automatic stay which might interfere in the rehabilitative process"), *decision vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) (granting limited discovery to one party). *See generally In re A.H. Robins Co.*, 972 F.2d 77, 82 (4th Cir. 1992) ("Staying third party litigation is within the broad equity powers granted bankruptcy courts under 11 U.S.C. § 105(a). [Citations omitted]. . . . The statute permits a bankruptcy court to stay related litigation where such litigation would 'interfere in the rehabilitative process'"); *In re United Health Care Org.*, 210 B.R. 228, 232-33 (S.D.N.Y. 1997) ("Courts have also stayed creditor actions against non-debtors where they have found that the bankrupt estate would be adversely effected because the creditor's action would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the nondebtor that would otherwise be devoted to a reorganization effort. [Citations omitted]. . . . As non-debtors do not fall within the protection of the automatic stay provided by § 362, at times § 105 must be invoked on their behalf to prevents creditors from frustrating an otherwise-viable reorganization effort by pursuing actions against them."); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 897 (Bankr. E.D.N.Y. 1993) ("When an action by a creditor of a debtor against a non-debtor third party threatens a debtor's reorganization, the creditor's action may be enjoined pursuant to section 105(a)."); *In re Family Health Servs., Inc.*, 105 B.R. 937, 942 (Bankr. C.D. Cal. 1989) (enjoining litigation against non-debtor members of debtor health maintenance organizations).

[6] *Johns-Manville Corp. v. Colo. Ins. Co. (In re Johns-Manville)*, 91 B.R. 225, 227 (S.D.N.Y. 1988).

WHEREFORE, PREMISES CONSIDERED, the Committee respectfully requests that this Court enter an order denying the relief sought by the Defendants and further relief as may be just and proper.

DATED: February 5, 2010.

> Respectfully submitted,
>
> MCKOOL SMITH P.C.
>
> By: */s/ H. M. Ray, III*
> PAUL D. MOAK
> State Bar No. 00794316
> HUGH M. RAY, III
> State Bar No. 24004246
> 600 Travis, Suite 7000
> Houston, Texas 77002
> Telephone: (713) 485-7300
> Facsimile: (713) 485-7344
>
> ATTORNEYS FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2010, a true and correct copy of the foregoing document has been served via DLR 5.1 and the ECF system, to the parties on the ECF service list.

> */s/ Hugh M. Ray, III*
> HUGH M. RAY, III