## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| DEEP MARINE HOLDINGS, INC. | § | Case No. 09-39313 |
| et al. | § | |
| | § | Jointly Administered Chapter 11 |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| DEEP MARINE HOLDINGS, INC., | § | |
| and DEEP MARINE TECHNOLOGY | § | |
| INCORPORATED | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Adversary No. 10-3026 |
| | § | |
| FLI DEEP MARINE LLC, BRESSNER | § | |
| PARTNERS, LTD., LOGAN | § | |
| LANGBERG, HARLEY LANGBERG, | § | |
| and DEEPWORK, INC. | § | |
| | § | |
| Defendants. | | |

## OPPOSITION OF DEFENDANTS FLI DEEP MARINE LLC, BRESSNER PARTNERS LTD., LOGAN LANGBERG AND HARLEY LANGBERG TO DEBTORS' EMERGENCY MOTION FOR PROTECTIVE ORDER AND TO SHOW CAUSE

Defendants Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg ("Defendants") respectfully submit this Opposition (the "Opposition") to Debtors' Emergency Motion for Protective Order and to Show Cause ("Debtors' Motion").

## Preliminary Statement

1.     The Debtors' Motion is frivolous and the Court should dispose of it forthwith.   The Court has ruled explicitly that it is "not going to restrict who [the Defendants] can depose."   (<u>See</u> the transcript of the January 27, 2010 hearing (the "Jan. 27 Hearing") at 25:18, attached hereto as <u>Exhibit A</u>).   The Court stated plainly: "They get to ask Mr. Kazeminy what he knows and what he doesn't know about the subjects of the preliminary injunction," and that if Kazeminy refused to answer such questions, the Defendants could seek to compel such a deposition.   (<u>Id</u>. at 26)   The Court also stated at that time that Defendants were entitled to discovery as to sales of the Debtors' stock by individual Delaware defendants. (<u>Id</u>. at 18-21, 25)

2.     The Defendants seek to take the depositions of two entities controlled by Kazeminy: DCC Ventures, LLC ("DCC Ventures") and The Triomphe Investors, LLC ("Triomphe").   Thus, the non-party discovery the Debtors wish to block with this motion falls squarely within the permissible thematic parameters set forth by the Court at the Jan. 27 Hearing.

3.     The non parties have not opposed these depositions.   Thus, it is curious, that the Debtors, whose interests are not prejudiced by the depositions, have moved to block this discovery.   It is <u>this</u> action that is waste of the bankrupt estates' resources. Further, the claim that estate resources would be wasted by conducting the depositions is disingenuous.   The Debtors' counsel need not attend every non-party deposition in person as they can participate by phone or review the transcript immediately after the deposition.

4.     Despite the clarity of the Court's January 27, 2010 rulings, and despite

their best efforts, the Defendants have not be able to depose Kazeminy, who is one of the Debtors' controlling shareholders – individually and through his entities including DCC Ventures – and purportedly one of its largest creditors.  Kazeminy and the Debtors have taken the position that Kazeminy is not a party to this Adversary Action – despite Kazeminy's clear status as an insider and controlling shareholder of the Debtors, and despite the fact that Kazeminy has benefited personally from the protections afforded by the bankruptcy process[1] – and have refused to produce Kazeminy for a deposition. Further, Kazeminy has used the personal service rules of the Federal Rules of Civil Procedure to avoid service of a subpoena compelling his attendance at a deposition. Kazeminy is purposely avoiding the process servers.

5.      In document discovery ordered by the Court, the Debtor produced a document which revealed for the first time that Kazeminy used yet another corporate entity, Triomphe, to purchase shares of the Debtor from another minority investor (the "Selling Investor").   Thus, Triomphe is involved in the <u>direct</u> claims asserted in the Delaware Complaint[2] and is fair game for a deposition on that basis.  In the absence of a deposition from the elusive Kazeminy, depositions from corporate representatives of his entities, DCC Ventures and Triomphe are critical for evidence as to the sale of shares of the Debtor outside the company, an area of discovery the Court has carved

---

[1] "[T]o enjoy the benefits of bankruptcy a recipient needs to suffer the burdens." <u>In re M.J.H. Leasing, Inc.</u>, 328 B.R. 363, 366 (Bankr. D. Mass. 2005).  Kazeminy is not suffering any of the burdens of the bankruptcy process – that is, he is not subjecting his personal assets and liabilities to the invasive authority of the bankruptcy court or acknowledging the jurisdiction of this Court over him personally – and yet he seeks to take advantage of all the benefits of the bankruptcy process.

[2] The "Delaware Complaint" refers to the complaint filed in Delaware Chancery Court asserting claims (the "Delaware Causes of Action") against the Debtors, as well as against Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Otto Candies, Jr., Otto Candies, III, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman, John Hudgens, Nasser Kazeminy, DCC Ventures, LLC, NJK Holdings Corporation, NKOC, Inc., and Otto Candies, LLC (the "Delaware Action").

out for the Defendants to pursue.

6.      One simple way to cut through all of this would be to require Kazeminy himself to sit for a deposition and answer questions within the topical parameters set by the Court more than one month ago.  Barring that, Defendants must be permitted to take the non-party discovery they seek.

7.      Counsel for Defendants initiated and participated in a Rule 26(f) conference with counsel for the Debtors, DCC Ventures, Triomphe, NJK Holding, Kazeminy, and the Creditors' Committee.  The Debtors are unwilling to compromise on any aspect of the scope of discovery and Kazeminy's counsel will not agree to accept service for Kazeminy or produce Kazeminy for deposition.

**Triomphe and Outside Sales of the Debtors' Stock**

8.      The Triomphe deposition, to which the Debtors' Motion specifically relates, is intended to probe one particular aspect of Defendants' direct claims.  Sometime in Spring 2008, the Selling Investor, who at the time was a minority shareholder of the Debtors, entered into discussions with Kazeminy to sell his shares in the Debtors to Kazeminy, based on a valuation of the Debtors of $100 million or more.  The Selling Investor represented to the Defendants that he would arrange to have their shares repurchased on the same terms on which he sold his shares to Kazeminy.  Instead, in or about Summer 2008, the Selling Investor sold his shares in the Debtors to Kazeminy. The Defendants were not given a chance to sell their shares alongside the Selling Investor, and the Selling Investor did not even inform the Defendants that the sale of his stock was being finalized.

9.      On information and belief the Selling Investor breached the representations he made to the Defendants in order to benefit Kazeminy and Otto

4

Candies[3].  As a result of the sale of the Selling Investor's stock to Kazeminy, Kazeminy and Candies were able to amass the more than 90% of the Debtors' stock that enabled them to effectuate the short form merger and squeeze out the Defendants from their minority stake.  In other words, on information and belief, Kazeminy decided that there was no need to buy out the Defendants at a $100 million valuation, when he could just squeeze them out at pennies on the dollar, via the Triomphe transaction, followed by the short form merger.  On information and belief, at Kazminy's instruction, the Selling Investor did not inform the Defendants of his deal with Kazeminy, even though the Selling Investor and Kazeminy knew that this would decimate the value of Defendants' shares.

10.    At the January 27 Hearing, the Court very clearly stated that "sales [of DMT stock] by individual Delaware defendants are not internal to the corporation."  (Jan. 27 Transcript at 18:3)  Documentary evidence has now revealed that Kazeminy used Triomphe to facilitate the Selling Investor's sale of the Debtors' stock in a transaction that Defendants believe involved misrepresentations to the Defendants.  No harm to the Debtors is implicated.  The Defendants do not have many other facts related to the Triomphe transaction, and need such facts to develop a record on which to argue ownership of the claims at the upcoming preliminary injunction hearing (the "PI Hearing").

---

[3] Otto Candies, LLC, supplied vessels for the Debtors' subsea projects, is a controlling stockholder of the Debtors and is also the Debtors' largest creditor.  Otto Candies, LLC is controlled by Otto Candies, Jr. and Otto Candies, III (collectively, with Otto Candies, LLC, "Candies").

**The Court Has Ruled Unambiguously on the Issue of Depositions**

11.     This Court has ruled that the Defendants are entitled to certain information even if does not explicitly relate to the claims in the Delaware Complaint. When the Debtors' counsel objected to the relevance to the PI Hearing of certain documents requested by the Defendants, the Court stated that the Defendants were entitled to submit an amended complaint for pre-approval and that "if he can re-plead, why shouldn't he get that [i.e., stock sales or purchases by non-Debtors] information?"

12.     Later in the January 27 Hearing, the Debtors' counsel specifically raised with the Court the issue of the depositions the Defendants were seeking to take. The Court was very clear that it was not going to restrict the depositions the Defendants could take and that if there was any issue with the scope of the deposition, that the Debtors should arrange a hearing on those issues.

13.     It is disingenuous for the Debtors to claim, on the one hand, that Kazeminy is not a party to the bankruptcy or to this Adversary Action, and then claim, on the other hand, that Kazeminy or the entities he controls cannot be questioned because any information they possess is either irrelevant or property of the bankruptcy estate.

14.     This Court was explicit in ruling that the Defendants can take depositions of anyone with relevant information, and specifically Kazeminy.  That is all the Defendants seek to do.  The Debtors have not articulated one good reason why this Court should reverse a ruling it made just one month ago.

**The Debtors Are Wasting Resources to Fight Discovery the Defendants Seek**

15.     The Debtors are expending major resources fighting the Defendants' attempts to prosecute claims that do not have any impact on the Debtors, but rather on the Debtors' controlling shareholders, Kazeminy and Candies.  In addition, at the same time the Debtors claim ownership of the Delaware Causes of Action, the Debtors show absolutely no interest in actually pursuing the claims, such as corporate looting, which might greatly benefit the bankrupt's estate.[4]

16.     Now the Debtors cry lack of resources in opposing several non-party depositions where the Debtors' counsel's physical presence is not necessary and which the deponents themselves apparently are not opposing.  The depositions relate to claims against Kazeminy and Candies, not the Debtors.  If it happens that information not purely related to the PI Hearing is divulged, by a non-party, how have the Debtors been prejudiced?  The Debtors could conference into the deposition by telephone, or could be provided with a transcript immediately afterward.  It is unclear, however, why (a) the Debtors' presence is required at every deposition – especially when each deponent has multiple counsel – and (b) any information not strictly related to the PI Hearing is being treated confidentially by all parties.  If the Defendants learn, for example, some information about a transaction between Candies and the Debtors, or if they view the Special Committee's report, no one has been harmed because the Defendants' use of such information obtained during this process is limited to establishing ownership of the Claims.

---

[4] Instead, the Debtors actually tried to hire Greenberg Traurig as special counsel, the same law firm that represented the purported "independent" Special Committee of the Debtors while lacking any semblance of independence due to its numerous ties to the Debtors and those accused of the wrongdoing the Special Committee was supposed to be investigating.

**The Tactics of the Debtors and Kazeminy Are a**
**Continuation of the Tactics They Used in the Delaware Action**

17.     On October 26, 2009, the Defendants filed the Delaware Complaint.  On November 2, 2009, counsel representing the Defendants and the defendants in the Delaware Action met in the chambers of the Vice Chancellor Leo Strine of the Delaware Chancery Court.   At that meeting, the Vice Chancellor granted the Defendants expedited discovery from the Debtors, Kazeminy and Candies.  Yet from that day to the date this Court issued the Temporary Restraining Order staying all proceedings arising out of the facts in the Delaware Complaint, the Debtor, Kazeminy and Candies successfully did everything in their power to avoid essentially all discovery.   The Defendants were in the process of exhausting all attempts to compel Kazeminy's deposition, including by motion to the Chancery Court, when the Debtors filed for bankruptcy and this Court issued the Temporary Restraining Order.

18.     In this motion, the Debtors have asserted that they have "quickly complied with the [Defendants'] requests for production" by producing documents and Messrs. John Bittner, John Hudgens, and Francis Wade Abadie for depositions. (Debtors' Motion ¶ 4).  But in fact, the Debtors first claimed that Hudgens and Abadie were not employed by the Debtors and therefore could not be compelled to appear at a deposition.  It was only after the Defendants repeatedly pressed the Debtors – and unsuccessfully attempted to personally serve Hudgens and Abadie – that the Debtors ultimately admitted to having been mistaken[5] about Hudgens' and Abadie's employment status.

---

[5] On information and belief, at the time the Debtors erroneously represented that Hudgens and Abadie were no longer in their employ, the total workforce of the Debtors consisted of three individuals, including Hudgens and Abadie.

19.     The Debtors have used every opportunity to prevent the Defendants from obtaining other information *about* the Debtors, even if the Defendants were not seeking that information *from* the Debtors or the information would not prejudice anyone.  For example, the Debtors have opposed all attempts to obtain a copy of the Special Committee Report, expending thousands of dollars for no clear reason at a time when the Debtors have consistently argued to this Court that its financial and management resources are limited.  The Debtors have also opposed the Defendants' attempts to take essential depositions – for example, Kazeminy's – even though this Court has very clearly stated that such depositions are appropriate and permitted.  The Debtors' are therefore wasting their limited financial resources – actually, their creditors' financial resources – in order to protect the Debtors' controlling shareholder at the expense of the creditors.

**The Interests of the Debtors and the Defendants Should be Aligned**

20.     All of this raises a fundamental question that the Defendants have long puzzled over and that has not yet been answered:  namely, why are the Debtors and their counsel fighting some of these battles when the interests of the Debtors and the Defendants are aligned?  In other words, the Debtors and the Defendants all want to see the Debtors have the highest possible valuation, with the most assets available to satisfy the claims of creditors and equity holders.  Many of the claims asserted in the Delaware Complaint provide the Debtors with a basis for recovery from Kazeminy and Candies.  As the Court stated at the TRO hearing:  "I'm obviously not deciding what's true, but there is a major corporate looting case pled here."  (TRO Transcript at 41:13, attached hereto as Exhibit B).  Yet the Debtors have shown no inclination to chase after Kazeminy or Candies, instead expending precious and limited resources to fight every

9

attempt by the Defendants to ascertain facts, while relying on the purported exonerating report of a Special Committee whose independence is suspect and which report the Defendants have been prevented at all costs from seeing.

**Together, Kazeminy, Candies, and the Selling Investor Appear to**
**Form a "Control Group" That Owes Fiduciary Duties to the Defendants**

21.     The scheme put in place by Kazeminy and Candies served to steal the Defendants' stake in the Debtors.  The Selling Investor played an instrumental part in that scheme.   Together Kazeminy, Candies, and the Selling Investor constitute a "control group" under Delaware law and owe fiduciary duties to the minority shareholders, separate and apart from any duties owed to the Debtors.   The Defendants are entitled to take discovery that will prove such facts, in order to prove that some of the claims in the Delaware Complaint are in fact direct claims and not property of the bankruptcy estate.

22.     Defendants had no intention to, and did not, violate the Court's Temporary Restraining Order.  The Debtor's Motion itself is a waste of the Court's time and the Debtor's resources.

## <u>Conclusion</u>

23.     For the foregoing reasons, the Defendants respectfully request that the

Court deny the Debtors' requested protective order and compel the noticed depositions.

Dated:   March 1, 2010

Respectfully submitted,

PADUANO & WEINTRAUB LLP

/s/ *Anthony Paduano*
Anthony Paduano (admitted *pro hac vice*)
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
ap@pwlawyers.com

JASPAN SCHLESINGER LLP
913 North Market Street, 12th Floor
Wilmington, Delaware  19801
(302) 351-8000

Attorneys for Defendants FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2010, a true and correct copy of the foregoing document was served on all parties on the attached service list by electronic means as listed on the court's ECF noticing system and by electronic mail as indicated.

/s/ *Jason Snyder*
Jason Snyder

David S Eagle, Esq.
Kelley Green, Esq.
Klehr Harrison, Harvey, Ransburg &
Eller's, LLP
919 Market Street
Suite 1000
Wilmington, DE 19801-3062
deagle@klehr.com
KGreen@klehr.com

Robert R. Weinstine, Esq.
Winthrop and Weinstine
Suite 3500
225 South Sixth Street
Minneapolis, MN 55402-4629
RWeinstine@winthrop.com
JWindler@winthrop.com

Kurt Heyman, Esq.
Patricia Enerio, Esq.
Proctor Heyman LLP
Wilmington, DE 19801
penerio@proctorheyman.com
kheyman@proctorheyman.com

Casey T Wallace, Esq.
Sandy D. Hellums, Esq.
Haynes and Boone LLP
One Houston Center
12212 McKinney Street, Suite 2100
Houston, Texas 77010-2007
casey.wallace@haynesboone.com
sandy.hellums@haynesboone.com

Joseph Schoell, Esq.
Todd Schiltz, Esq.
Drinker Biddle
1100 North Market Street
Suite 1001
Wilmington, DE 19801
Joseph.Schoell@dbr.com
Todd.schiltz@dbr.com

Geoffrey L. Harrison, Esq.
Eric J. Mayer, Esq.

Sammy Ford IV, Esq.
Sussman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
gharrison@susmangodfrey.com
sford@susmangodfrey.com

Kevin W Goldstein, Esq.
Stradley Ronan Stevens & Young, LLP
300 Delaware Avenue Suite 800
Wilmington, DE 19802
kgoldstein@stradley.com
fgauthier@stradley.com

Thomas J. Cortazzo, Esq.
Jena W. Smith, Esq.
Baldwin Haspel Burke & Mayer LLC
110 Poydras Street
Energy Center 22nd Floor
New Orleans, LA 70163-2200
tcortazzo@bhbmlaw.com
smith@bhbmlaw.com

John J. Murphy, III, Esq.
Stradley Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
jmurphy@stradley.com

Rick S. Miller, Esq.
Ferry, Joseph & Pearce, P.A.
824 North Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899
RMiller@eapdlaw.com

Michael J. Maimone, Esq.
Joseph B. Cicero, Esq.
Gregory E. Stuhlman, Esq.
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
maimonem@gtlaw.com
ciceroj@gtlaw.com
stuhlmang@gtlaw.com

K.B. Battaglini, Esq.
Greenberg Traurig, LLP
1000 Louisiana, Street, Suite 1700
Houston, TX 77002
BattagliniK@gtlaw.com

Laurie Schenker Polleck, Esq.
Jaspan Schlesinger LLP
913 Market Street, 12th Floor
Wilmington DE 19801
lpolleck@jshllp-de.com

Steve Schlesinger, Esq.
Lisa Golden Esq.
Michael Leon, Esq.
Jaspan Schlesinger LLP
Garden City Plaza, Floor 5
Garden City, NY  11530-3333
sschlesinger@jaspanllp.com
lgolden@jaspanllp.com
mleon@jaspanllp.com

Denise Seastone Kraft
Tyler O'Connell Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street, Ste 1500
Wilmington, DE 19801
TOConnell@eapdlaw.com
DKraft@eapdlaw.com

Rick Lesser
Lesser & Associates
423 South Pacific Coast Highway

Suite 206
Redondo Beach, California 90277
lesser@divelaw.com
lizardbrane@aol.com

Marcy Kurtz, Esquire
Jason Cohen, Esquire
Will Anderson, Esquire
Trey Wood, Esquire
Bracewell & Giuliani
711 Louisiana Street
Suite 2300, Houston Texas 77002-2770
marcy.kurtz@bgllp.com
jason.cohen@bgllp.com
will.anderson@bgllp.com
trey.wood@bgllp.com

Tony M. Davis
Baker Botts LLP
One Shell Plaza
910 Louisiana
Houston, TX 77002
tony.davis@bakerbotts.com

John Bittner
Grant Thornton LLP
1717 Main Street
Dallas, TX 75201
John.Bittner@gt.com