1    IN THE UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF TEXAS

3    HOUSTON DIVISION

4  DEEP MARINE HOLDINGS, INC.    §    CASE NO. 10-03026-H1-ADV
                                 §
5  VERSUS                        §    HOUSTON, TEXAS
                                 §    JANUARY 27, 2010
6  FLI DEEP MARINE, LLC          §    3:00 P.M. TO 3:37 P.M.

7
                            MOTIONS #20 & #24
8

9              BEFORE THE HONORABLE MARVIN ISGUR
                 UNITED STATES BANKRUPTCY JUDGE
10

11
                          APPEARANCES:
12

13         FOR PLAINTIFF:     SEE NEXT PAGE

14         FOR DEFENDANT:     SEE NEXT PAGE

15         COURT RECORDER:    KETTA CHUDOMELKA

16         CASE MANAGER:      RISHONA SMITH

17

18

19

20              PREPARED BY:

21         JUDICIAL TRANSCRIBERS OF TEXAS, INC.
                    P.O. Box 925675
22            Houston, Texas 77292-5675
          Tel: 281-328-6179 ▼ Fax: 281-462-2016
23            www.judicialtranscribers.com

24
      Proceedings recorded by electronic sound recording;
25       transcript produced by transcription service.

1                          **APPEARANCES:**

2

3    FOR DEEP MARINE
     HOLDINGS, INC.:                JASON G. COHEN
4                                   WILLIAM (TREY) WOOD
                                    BRACEWELL & GIULIANA, LLP
5                                   711 LOUISIANA ST., STE 2300
                                    HOUSTON, TEXAS  77002
6                                   713-221-1416

7
     FOR THE CREDITOR'S
8    COMMITTEE:                     HUGH M. RAY, III
                                    MCKOOL SMITH
9                                   600 TRAVIS, SUITE 7000
                                    HOUSTON, TEXAS  77002
10                                  713-485-7300

11
     ALSO APPEARING (TELEPHONICALLY):
12
     FOR DEEP MARINE
13   HOLDINGS, INC.:                BATTAGLINI, K.B.
                                    GREENBERG TRAURIG, LLP
14                                  1000 LOUISIANA ST. STE. 1700
                                    HOUSTON, TEXAS  77002
15                                  713-374-3500

16
     FOR FLI DEEP MARINE, LLC:      ANTHONY PADUANO
17                                  JASON SNYDER
                                    PADUANO & WEINTRAUB, LLP
18                                  1251 AVE. OF THE AMERICAS
                                    SUITE 920
19                                  NEW YORK, NEW YORK  10020
                                    212-785-9100
20

21                                  MICHAEL DEYOUNG
                                    (NO INFORMATION PROVIDED)
22
     FOR OTTO CANDIES, LLC,
23   OTTO CANDIES, III,
     OTTO CANDIES, JR.:             KARL J. ZIMMERMAN
24                                  BALDWIN HASPEL BURKE & MAYER
                                    SUITE 2200 ENERGY CENTER
25                                  1100 POYDRAS STREET
                                    NEW ORLEANS, LOUISIANA  70163
                                    504-569-2900

1   APPEARING (TELEPHONICALLY - CONT'D):

2

   FOR PAUL MCKIM:                 PETER RUGGERO
3                                 HAYNES AND BOONE, LLP
                              1 HOUSTON CENTER
4                                 1221 MCKINNEY, SUITE 2100
                              HOUSTON, TEXAS  77010
5                                 713-547-2649

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    __HOUSTON, TEXAS; WEDNESDAY, JANUARY 27, 2010; 3:00 P.M.__

2           **THE COURT:**  Okay.  We're here in Adversary

3    10-3026.  We're going to take appearances in court and then

4    we'll take appearances on the telephone.

5                  Who do we have here?

6           **MR. COHEN:**  Good afternoon, Your Honor.

7                  Jason Cohen and Trey Wood, for the Debtors.

8           **MR. RAY:**  Your Honor, Hugh Ray, for the

9    Committee.

10          **THE COURT:**  Who do we have in Washington?  I'm

11   sorry, not in Washington, New York, I apologize.

12          **MR. PADUANO:**  New York, right.

13                 Good afternoon, Your Honor.  It's

14   Anthony Paduano and Jason Snyder in New York, for the FLI

15   parties.

16          **THE COURT:**  Thank you.

17                 In New Orleans?

18          **MR. ZIMMERMAN:**  Good afternoon, Your Honor.

19                 Karl Zimmerman, Baldwin Haspel Burke and

20   Mayer, for Otto Candies, III; Otto Candies, Jr.;

21   Otto Candies, LLC.

22          **THE COURT:**  All right.

23                 In Austin?

24          **MR. BATTAGLINI:**  Your Honor, this is

25   K.B. Battaglini, with Greenberg Traurig.  I'm normally in

JUDICIAL TRANSCRIBERS OF TEXAS, INC.

1   Houston.   Special counsel for the Debtors, a motion pending.

2           **THE COURT:**  Could you spell your last name for me

3   please?

4           **MR. BATTAGLINI:**  B-a-t-t-a-g-l-i-n-i.

5           **THE COURT:**  Thank you.

6               516 area code, who do we have?

7           **MR. DEYOUNG:**  Your Honor, you also have

8   Michael deYoung here, also on behalf of FLI, as co-counsel.

9           **THE COURT:**  All right.

10              In Houston, from -- I think that's

11  Haynes and Boone extension.

12          **MR. RUGGERO:**  Yes, Your Honor, Peter Ruggero on

13  behalf of Paul McKim.  We're not making an appearance today,

14  just merely monitoring the case.

15          **THE COURT:**  All right.  I'll go ahead and re-mute

16  your line.  Thank you.

17          **MR. RUGGERO:**  Thank you.

18          **THE COURT:**  All right.  I've got cross-motions to

19  compel and for protection.  There was just a response that

20  was filed a few minutes ago, I think, by Mr. Paduano and it

21  references five requests for production, and in preparing

22  for the hearing, I didn't see a request for production that

23  only had five requests for production so I want to get -- be

24  sure that I'm -- what I'm dealing with is the right dispute.

25              So, Mr. Paduano --

1     **MR. PADUANO:**  Yes, Your Honor.  We skinnied it

2  down after attempting to speak to Counsel for the Debtor,

3  but it's -- it makes that Exhibit H to my affidavit and it

4  is toward the back of the document, Your Honor, is nine

5  pages from the -- eight pages from the back of the

6  affidavit, Exhibit H.

7     **THE COURT:**  And so that's all that you're

8  requesting at this stage to compel are -- well, let me get

9  there, hold on.  I've got H.

10     What page of H?  Okay.  Those five things

11  listed on Pages -- under "Document Requests."

12     **MR. PADUANO:**  That's correct, Your Honor.

13     **THE COURT:**  Okay.  So that's all you're seeking

14  to compel.

15     I assume that's all you're then seeking

16  protection from now, Mr. Cohen; is that right, or --

17     **MR. COHEN:**  If it's -- actually, as the Court has

18  stated, that is correct.  In Mr. Paduano's motion to compel,

19  he asks for relief in the alternative.

20     Also, he's looking to possibly compel all 13

21  of his original requests for production as well.

22     **THE COURT:**  Right, and that's what I'm trying to

23  figure out.  If we're just down to the five, I only want to

24  litigate the five.  If we're on all 13, then I want to deal

25  with all 13.

1          Mr. Paduano, your --

2          **MR. PADUANO:**  It's Anthony --

3          **THE COURT:**  Go ahead.

4          **MR. PADUANO:**  Your Honor, I'm sorry.  It's

5   Anthony Paduano.  Yeah, if the Court focuses on five, that

6   will, I think, dispose of the application.  We're trying to

7   make things easy.

8          **THE COURT:**  All right.  Unless somebody wants to

9   make an argument, I'm inclined just to tear into each one

10  individually and figure out whether they pertain to the

11  application for a preliminary injunction or not.

12          Does anybody have any problem with just

13  going into each one of them?

14          **MR. PADUANO:**  It's Anthony Paduano.  We do not

15  have -- that's fine with us, Your Honor.

16          **MR. COHEN:**  That's fine with the Debtors.

17          **THE COURT:**  Okay.  So Number 1 is:

18          "All documents that were forwarded to or prepared

19          by each of the individual Delaware defendants or

20          any entity other than the Debtors under the

21          ownership or control of any of the individual

22          Delaware defendants and that are now in the

23          Debtors' possession concerning the merger of

24          Deep Marine Holdings, Inc. (DMH) and together

25          with Deep Marine Technologies (DMT) with and into

1          NKOC, Inc., the merger."

2               Now, tell me how that request pertains to

3    the preliminary injunction and then tell me how it doesn't.

4    I'm going to -- on the first one, I'll let Mr. Paduano go

5    first.

6          **MR. PADUANO:**  Sure, Your Honor, it goes to --

7    that really goes to the heart of why we're suing Delaware.

8    There was the short-form merger that was done that cancelled

9    our shares.  We believe we pleaded through the orchestration

10   of Mr. Kazeminy and Mr. Candies and these are the basic

11   documents.  We do not have access to those materials in any

12   form.  We have just the notice of short-form merger so we

13   don't know what actually has been accomplished or why or the

14   bona fide of it.

15         **THE COURT:**  I mean, the way this is worded --

16   before I let Mr. Cohen speak -- it's much broader than that,

17   and if what you're looking for are the merger documents, the

18   ones that effected the merger as opposed to any document

19   that might concern it, that seems fairly straightforward and

20   I, frankly, don't know whether it's relevant or not but I

21   don't know why it's a problem either.

22         **MR. PADUANO:**  And we don't have -- we do have the

23   notice, Your Honor, but we don't have anything else that

24   pertains to it, the valuation.  This is a company, for

25   example, that prior to the time of the short-form merger, we

1  had valuation to the tune of $100 million and thereafter had

2  no value.

3          **THE COURT:**  Yeah, but I -- look, all the

4  valuation stuff goes to -- I don't know that that goes to

5  anything under the preliminary injunction.

6              Just getting down the basic merger documents

7  seems to me a sufficient background, that I'd do that.

8              But tell me why, for example, a valuation

9  would go towards the preliminary injunction question?

10          **MR. PADUANO:**  Yeah, Your Honor is right.  But

11  there are documents there that are going to speak to the

12  motive, the economic rationale for it, that is, how can

13  anything be worth -- a legitimate entity be worth

14  $100 million one day and nothing the next?  So -- and we

15  sued for that, to discover that to find that out because we

16  don't think that that worked out fairly.

17              And that's the basis of our claim in

18  Delaware, that is, that Mr. Candies and Mr. Kazeminy and

19  their entities for their benefit crammed down this

20  transaction to line their pockets, nothing to do with the

21  entities.  But that's why we seek it.

22              But you have the short-form merger to --

23  having the document but it gives us no detail as to why

24  things were done and why they weren't done.

25              We'll get to the witnesses in a second but

1  we're trying to get Mr. Kazeminy and Mr. Candies and their

2  entities to testify, the Chief Restructuring Officer can't

3  know anything about that.  That's why the documents are

4  important.  He wasn't on the scene at the time.

5        **THE COURT:**  Tell me though, in detail, how that

6  affects whether or not we should grant a preliminary

7  injunction.  I understand fully why that matters as to why

8  there are merits to the claim.  And as I understand the

9  Debtors' response, they will, for the purpose of the

10  preliminary injunction hearing, be stipulating that the

11  claim has merits, not for all time but for the purposes of

12  the injunction.

13        So if we assume the claim has merit, why do

14  those documents pertain to whether or not to issue the

15  preliminary injunction?

16        **MR. PADUANO:**  Because, Your Honor, it's -- if we

17  get those documents once we get outside the simple little

18  legal document, we understand they're going to stipulate and

19  they're going to say, for purposes of proceeding before you,

20  "We've got it all right just the way we pleaded it."  We

21  think the underlying documents will show that Mr. Kazeminy

22  and Mr. Otto [sic] were out to extinguish our shares without

23  regard to the company.  There's got to be more than just the

24  document the lawyers finally produced and delivered to us

25  extinguishing us, cancelling our shares.  So if that's the

1    only (indiscernible), I don't mean to say we want everything

2    from all the 26 lawyers who have appeared for the Debtors

3    and the defendants -- I did a case in Delaware -- but we

4    sure want some of the documents that provide the rationale

5    and the wherewithal as to how they -- we're worth 100 one

6    day -- and I told you that's because we had an ongoing live

7    entity one day, then one day we didn't.  We had no value and

8    our shares were cancelled.

9                    And we have things like their debt.  You

10   know, debt suddenly appeared on this company for the benefit

11   of Mr. Kazeminy and Mr. Candies' entities that we were

12   unaware of.  There was no notice given to us.  So in theory,

13   this would be encompassed -- someone made the valuation,

14   someone made the judgment that this was a bona fide

15   corporate transaction to go forward.  Just want some of the

16   underlying materials.

17              **THE COURT:**  Mr. Cohen?

18              **MR. COHEN:**  Your Honor, I think the Court and

19   Mr. Paduano have made my argument for me.  He was just

20   speaking to motive and rationale behind the merger.  I don't

21   see how that's applicable to who was harmed and that's the

22   question we have to answer to get to the question of

23   substantial likelihood of success on the merits of our cause

24   of action, which is Section 541, declaratory judgment.

25                    He said -- Mr. Paduano said that he

1   alleges -- you know, debt was added to the company.  Again,

2   that would be a harm to the company.

3              He said he wanted to know how his shares

4   could have gone from 100 million to a dollar.  Again, that

5   would go to the value of the company and to his appraisal

6   action which is currently stayed.

7              He said, you know, the directors and

8   officers were trying to line their pockets.  Once again,

9   harm to the company.  We're not saying that these

10  shareholders -- former shareholders were not harmed.  We're

11  saying any harm that might have occurred to them was

12  secondary to the initial harm to the company.  The company

13  was allegedly looted.  The company allegedly took on

14  inflated debt that was then converted which then was used to

15  "squeeze out" the shareholders.  So the initial harm, the

16  key harm is to the Debtor itself, not to the shareholders.

17             And that's -- it doesn't matter what we

18  produce to rationale of value.  I mean, we'll stipulate that

19  all the facts in our pleading are true.  There's no factual

20  disputes there.

21             **MR. PADUANO:**  Your Honor -- and Counsel, I think,

22  misspoke.  Mr. Candies and Mr. Kazeminy were not directors

23  or officers.  What happened here with this -- these events

24  of which we don't know, some type of debt was created for

25  the purpose of, in effect, increasing their equity stakes in

1  the entity so they could squeeze us out.  There are no

2  other shareholders of note.  Mr. Kazeminy's entities,

3  Mr. Candies' entities, and us.  That's it as far as we know

4  of note.  And we believe that it was done in reaction to the

5  Delaware lawsuit in an effort to take away our equity.  So

6  they were not directors and officers.  They were lining

7  their pockets from the company's coffers.  They were doing

8  it at our expense.  And some transactions are simply not

9  known to us.  And I don't think it's unreasonable for us to

10  get some discovery as to what the bona fide transactions

11  are.

12         **THE COURT:**  I guess I don't understand,

13  theoretically, how what they do through the company harms

14  the shareholders individually other than doing it through

15  the company.  And tell me what these documents conceivably

16  could show that would show a direct injury rather than an

17  indirect injury.

18         **MR. PADUANO:**  It's Anthony Paduano, Your Honor.

19  We don't know what they did.  We just don't know what

20  Mr. Candies and Mr. Kazeminy did.  But we do know that they

21  had in theory no access to the management of the company.

22  They were not directors, they were not officers, was not --

23         **THE COURT:**  So the company can sue them for

24  interference.  I don't see how that gives the individual

25  shareholders a claim.

1          **MR. PADUANO:**  Because we dealt with that.  We

2    paid dues up into the investment.

3          **THE COURT:**  What is that?

4          **MR. PADUANO:**  They dealt with -- yeah, the

5    controlling shareholders -- Mr. Kazeminy's entities and

6    Mr. Candies' entities all had a fiduciary duty under

7    Delaware law.  We cited that to the Court.

8          **THE COURT:**  Right, and I --

9          **MR. PADUANO:**  They owe us.  In this closed

10   corporation, where there's no markets for our securities, we

11   could not ever sell our shares if we were unhappy.  They owe

12   us a duty.  They cannot manipulate the process to injure us

13   and that's the basis of our claim.  So it's not that we're

14   arm's length or equal standing with them, they have -- we're

15   minority investors and they must protect our interests.

16          And the reason we seek these documents and

17   seek to pursue this is because our interests were not just

18   handled badly but that they -- and they keep saying -- and

19   this is the best point we've got: one day the entity's worth

20   100-plus million dollars, the next day it's not.  Something

21   happened.

22          **THE COURT:**  Yeah, and --

23          **MR. PADUANO:**  We need to find out what happened.

24          **THE COURT:**  No, but let's assume --

25          **MR. PADUANO:**  Something we don't know because we

1  don't have any of the documents as to how this possibly

2  could happen, and I don't think it's unreasonable to assume

3  that something wrong happened to the enterprise.  And it

4  suffers no loss under an operational basis during this

5  period of time of note.  One day it's worth something, the

6  next day it's not.  Mr. Kazeminy and Mr. Candies, they owe

7  us under government law as we fight to the Courts a

8  fiduciary duty to watch our interests.

9          **THE COURT:**  Right.

10          **MR. PADUANO:**  And we don't think -- we think that

11  the underlying documents would show just the contrary that

12  they've conspired together and I don't know with whom else,

13  but to force us out and to cancel our shares.

14          **THE COURT:**  Okay.  As to Item -- Document Item

15  Number 1, I will grant the motion for protection.  I will

16  deny the motion to compel.  My reasons for that are as

17  follows:

18              I agree that there is substantial body of

19  law that has been submitted by Mr. Paduano that shows that

20  the shareholders may, under Delaware law, sue for a breach

21  of fiduciary duty and that there is, in fact, a fiduciary

22  duty that may run to shareholders; however, under bankruptcy

23  law, when the injury to the shareholders is derivative of

24  the corporation, no matter whether there is a separate duty

25  to the individual shareholders, the right to bring the suit

1 belongs to the corporation.

2                    And I'm hearing no argument at all by the

3 shareholders as to how any of these documents might reflect

4 any direct injury to them versus an indirect injury that

5 goes through the corporation.

6                    And I'm hearing the Debtors stipulate that

7 as to the indirect injury, for the purposes of the

8 preliminary injunction, they will stipulate that all the

9 allegations of wrongdoing occurred.

10                    Therefore, I think that the documents are

11 not relevant to the question of the preliminary injunction.

12                    I'll grant the motion for protection.

13                    Deny the motion to compel.

14                    Let's go to Number 2:

15            "All documents concerning DMT shares sold by or

16            for any of the individual Delaware defendants or

17            by any entity other than the Debtors under the

18            ownership or control of any of the individual

19            Delaware defendants including but not limited to

20            documents concerning:

21            "a) The negotiation of the purchase price for

22            such shares; and

23            "b) The consideration actually paid for such

24            shares."

25                    Tell me how that relates to the -- or why

1  you should get protection from that, Mr. Cohen?  I'll make

2  you go first on Number 2.

3          **MR. COHEN:**  Yes, Judge.  I mean, basically, I

4  would lump this in as the same argument we just heard for

5  RFP Number 1, to the extent that the purchase price for the

6  shares was diluted, the same argument as RFP Number 1, to

7  the extent they want to know the purchase price so they can

8  establish valuation, the same argument as Number 1, or it's

9  the appraisal action which is stayed.  That's it.  I mean, I

10 would say this is the exact same request for production, the

11 exact same request, Your Honor.

12          **THE COURT:**  Well, what's the Debtor doing?  I

13 mean, let's assume for a minute, if you want protection,

14 that the answer is "That we have no such documents."

15             What's the Debtor doing with documents that

16 concern how an individual Delaware defendant sold their

17 shares?

18             Why would the Debtor even be in possession

19 of that?

20          **MR. COHEN:**  I don't know what we're in possession

21 of and what we're not in possession of.  We --

22          **THE COURT:**  Well, why do you need protection over

23 something you're not in possession of?

24          **MR. COHEN:**  Well, we may or may not be in

25 possession.  We need protection from expending the effort

1  and time and resources to go dig up this information, and to

2  the extent these --

3          **THE COURT:**  But sales by individual Delaware

4  defendants are not internal to the corporation, right?

5          **MR. COHEN:**  That's true.

6          **THE COURT:**  I mean -- and most of your argument

7  is that if all the injury is internal to the corporation,

8  how can it relate?

9              This is external.  If they went and sold

10 shares, I mean, I can see how their sale of shares in some

11 fashion could, in fact, adversely affect other shareholders

12 and have nothing to do with the corporation.

13             I don't know if that occurred but at least

14 theoretically it could, and why shouldn't they be able to

15 prove that?

16         **MR. COHEN:**  Well, I can see how the sale of some

17 third-party shares could affect the sale price, but I don't

18 see how that's relevant to this proceeding at all, to who

19 owns the causes of action as pled in the complaint.

20         **THE COURT:**  Well, the causes of action as pled

21 are one thing.

22         **MR. COHEN:**  Uh-huh.

23         **THE COURT:**  But, I mean, I've told him he can

24 re-plead.

25         **MR. COHEN:**  Right.

1          **THE COURT:**  And if he can re-plead, why shouldn't

2    he get that information?  I don't see a reason not to give

3    him this.

4          **MR. COHEN:**  Well, again, I'd say it's not

5    relevant to this -- to the matter at hand, and so I don't

6    think that the Debtor should have to expend the time and

7    effort to track down this information.

8          **THE COURT:**  Well, the -- I mean, the Debtor is

9    just as liable to do -- to respond to discovery in a lawsuit

10   as anybody else if it's a legitimate lawsuit.

11         **MR. COHEN:**  Well -- and in this case, discovery

12   should be focused primarily or only on the preliminary

13   injunction.  This isn't a fishing expedition to see if

14   there's some other causes of action out there that they then

15   can draft up.  And so I don't understand --

16         **THE COURT:**  So you want me to make --

17         **MR. COHEN:**  -- what cause of action --

18         **THE COURT:**  -- them redo this as a 2004 exam?

19             I mean, why are we going to go through that?

20         **MR. COHEN:**  Well, I don't understand what cause

21   of action this relates to, Your Honor.  All I can understand

22   is that perhaps it relates to the appraisal action and I

23   think that's stayed.  That's why I would like for the Debtor

24   to be able to --

25         **THE COURT:**  Yeah, tell me why you need it.  I

1    don't see a reason to give them protection from it.  I also

2    don't know why you need it.

3                   So, Mr. Paduano, why do you need it?

4              **MR. PADUANO:**  We can -- Your Honor, we need

5    something to do this hearing on the merits, that is, that

6    what these individuals have done in terms of their exercise

7    of duty or not to us, we've got to start somewhere.  We're

8    focused on what we've said there because we think that's

9    pretty narrow and not disruptive and not particularly

10   controversial.  At some point, there are documents that

11   underlie these actions that we complain about as to whether

12   these claims belong to us which we think they clearly do

13   under Delaware law or to the estate, but at some point, we

14   need a record to deal with -- and the Court needs a record

15   as well to deal with on the 8th so --

16             **THE COURT:**  And isn't Number 3 pretty much the

17   same as Number 2?

18             **MR. PADUANO:**  Yes, Your Honor, it is.

19             **THE COURT:**  Yeah, I'm going to deny the motion

20   for protection, and grant the motion to compel as to

21   Number 2 and Number 3 in that I do think that those

22   documents potentially relate to individual injury caused by

23   non-debtors.  I don't know exactly how it's going to happen

24   but I, frankly see no reason to grant the Debtors'

25   protection of that.  Those are simple, straightforward and

1    ordinarily would not be in the Debtors' possession.  So if

2    the Debtors are in possession of documents that pertain to

3    the shares by the individual shareholders, let's turn them

4    over and we'll see what can happen with them.

5                    So I'll compel Production Number 2 and

6    Number 3.

7                    Number 4:

8                    "All documents sufficient to show the exercise of

9                    any DMT stock warrants the conversion of DMT debt

10                   to equity or the conversion of DMT equity to debt

11                   in each case from 2002 to the present and

12                   concerning the shares held by any of the

13                   individual Delaware defendants or any entity

14                   other than the Debtors under the ownership or

15                   control of any of the individual Delaware

16                   defendants or claims or debts owed to or by any

17                   of the individual Delaware defendants."

18                   I assume you mean claims or debts owed to or

19   by any of the individual Delaware defendants to DMT; is that

20   correct?

21                   **MR. PADUANO:**  You're right, Your Honor, yes, sir.

22                   **THE COURT:**  Yeah.  This, I think, is the same as

23   Number 1, and I don't understand.  This is so internal to

24   the corporation and would reflect injury that would be

25   derivative to the corporation.

1          Why would the ruling on this be different

2  than the ruling on Number 1?

3          **MR. PADUANO:**  I'm not -- I don't want to rehash

4  Number 1 because I understood clearly what the Court said,

5  but to the extent the documents concern the individual

6  defendants, we think we should get them with their

7  signatures to them, from them, that's all.  We're not trying

8  to be -- we're not trying to -- and I don't want to do

9  anything to evade what the Court said, but we're not trying

10  to go into the guts of the corporation as opposed to what

11  the corporation has done in exchange with the individual

12  defendant who we've got no problem with.

13          **THE COURT:**  And how can that reflect some

14  individual injury to your clients that isn't derivative of

15  the corporation?

16          **MR. PADUANO:**  I don't -- well, because I think

17  that the individual shareholders -- again, they're not

18  officers and directors whom we've sued who were -- well,

19  let's focus on this.  Mr. Kazeminy's entities and Candies'

20  other entities, we think they behaved badly and they

21  breached their duties to us, the shareholders.  And under

22  Delaware law, they're not supposed to do that.  But there's

23  got to be documents here because this badly orchestrated in

24  some form, you know, we -- the Court can tell we're -- it's

25  our belief that it was orchestrated outside the corporation.

1  We could clearly argue that on the 8th, but there are

2  documents that are not internal to the corporation that went

3  to these gentlemen and their entities and were signed or

4  exchanged by and between them.  So it's not that we're

5  looking for the thought processes and information to the

6  corporations, but there are dealings with others in our

7  shoes and here the Kazeminy and Candies' entities are like

8  that except they're the majority.

9        **THE COURT:**  I'm going to make the same ruling

10  here that I did in Number 1.  It seems to me that what we're

11  dealing with in Number 4 and that really the argument made

12  by Mr. Paduano's clients has to do with to whom a duty runs,

13  not to how the injury flows.  And as I've indicated at the

14  TRO hearing and indicating today, in evaluating the

15  preliminary injunction, I'm going to assume that there is a

16  duty owed.  And the question is:

17             How does the injury flow for determining

18  whether or not it is property of the estate for bringing it?

19  And as long as the injury flows through the Debtor, no

20  matter where the duty flows, I don't see that the documents

21  are relevant.  And I'm not hearing how this would result in

22  any direct injury versus indirect injury.

23             Number 5:

24             "All documents upon which the Debtors rely in

25             making their case that the claims of the Delaware

1          defendants exclusively against the individual

2          Delaware defendants are actual property of the

3          Debtors' estate."

4                  That's asking for an exhibit list.

5                  When are you going to give them an exhibit

6    list because I'm going to require that anyway?

7              MR. COHEN:  Well, we can do it according to local

8    rules.  We're going to use the same as exhibits as for the

9    TRO, so I'll reproduce those tomorrow.  And as we come up

10   with any new exhibits, we'll turn them over immediately.

11                 So we'll stipulate to produce for Number 5.

12             THE COURT:  All right.  So I'm going to grant the

13   motion to compel 2, 3, and 5.

14                 I'll deny the motion to compel 1 and 4.

15                 I'll grant the motion for protection on 1

16   and 4.

17                 And I'll deny the motion for protection on

18   2, 3, and 5.

19                 I'll issue an order to that effect.

20                 Thank you.

21             MR. COHEN:  Your Honor, there are a couple more

22   issues.

23             THE COURT:  What else do we have?

24             MR. COHEN:  Did somebody drop off?

25                 Is Mr. Paduano still on?

1          **THE COURT:**  I'm sure he's still here.

2          **MR. COHEN:**  Okay.

3          **MR. PADUANO:**  We're on.  Yes, we're here,

4    Your Honor.

5          **THE COURT:**  Okay.

6          **MR. COHEN:**  Your Honor, there's also been five

7    depositions that we're aware of, one of which has been

8    noticed to the company, to Mr. Bittner, our CRO, and we've

9    agreed to produce Mr. Bittner to be deposed on the four

10   elements of preliminary injunction to the extent that he

11   can.

12          But these other four depositions relate

13   really to Misters Kazeminy; Candies; Hudgeons, our former

14   CFO; and Abbady (sp.ph.), our former COO.  If we get some

15   guidance from the Court as to the propriety of those

16   depositions, the Debtor feels that none of those depositions

17   are appropriate.

18          **THE COURT:**  Yeah, I'm not going to restrict who

19   he can depose.  I think I've already set forth in fairly

20   good detail the subject matter where I believe is relevant,

21   and if those folks have relative information that is

22   discoverable, he can take their deposition.  I'm not going

23   to protect them from giving a deposition.

24          If the scope of the deposition exceeds the

25   permissible bounds, then you all need to arrange for a

1   hearing at that point.  Contact -- file something, contact

2   Ms. Dolezel from the depositions.  Let's not have everybody

3   leave the depositions and come back.  I'm not planning to go

4   anywhere between now and -- when are we coming back,

5   February the 8th?

6            **MR. COHEN:**  Yes.

7            **MR. PADUANO:**  Yes, Your Honor.

8            **THE COURT:**  I'll be in town.  And so you all may

9   have to wait a couple of hours till I get out of a hearing

10  but get something short on file, ask Ms. Dolezel to give you

11  an emergency hearing, you'll have your court reporter there

12  to read back the questions, and I'll try and resolve them.

13  But my rulings are going to be very consistent with what

14  I've done today.

15            And I'm not going to sit here and say that

16  Mr. Kazeminy does or does not know anything.  They get to

17  ask Mr. Kazeminy what he knows and what he doesn't know

18  about the subjects of the preliminary injunction.  And If

19  they ask him about things that aren't within the subject of

20  the preliminary injunction, you can seek to get a protection

21  order at that point.  And if he refuses to answer questions

22  that are within the scope of the preliminary injunction,

23  then Mr. Paduano can seek to compel.  And I'll do all of

24  that with somewhat immediate hearings.  So file a short

25  motion and call Ms. Dolezel.

1          **MR. COHEN:**  And for clarity, Your Honor, while

2     we're all here, matters related to facts pled in the

3     complaint we do not believe they are relevant -- to facts

4     pled in the Delaware complaint, we do not believe they are

5     relevant to the preliminary injunction.

6               Can the Court give us some guidance?

7          **THE COURT:**  Well, I mean, I've expressed that --

8     my views about that multiple times.  I'm not going to do it

9     again.  I'm going to try your application for a preliminary

10    injunction, and as to whether there may be things that are

11    or aren't relevant, I don't know.  We'll deal with it.  I'm

12    just not going to sit here and deal with every potential

13    question that might be asked or might be objected to.  So

14    when you get there -- I mean, you know, I think I've been

15    pretty available to the parties for emergency hearings on

16    pretty short notice and I will continue to be available.  I

17    know how important this is to everybody's clients.  But I

18    think you and Mr. Paduano filed these things either

19    yesterday or today and you're getting the hearing within

20    24 hours so I wouldn't complain too much if I were you about

21    that.

22         **MR. COHEN:**  No complaints, Your Honor.  There are

23    a couple -- we had some other agenda items set for today in

24    the main case.

25              **THE COURT:**  I did not realize that.  Go ahead.

1            **MR. COHEN:**  May I consult with Mr. Wood for one

2  moment please?

3            **THE COURT:**  Yeah.

4        **(Pause/Counsel confer)**

5            **MR. COHEN:**  Thank you, Judge, for that couple of

6  minutes there.  I have to just dive back in.  And we

7  understand the Court's ruling, and we intend to comply and

8  produce documents pursuant to RFPs 2 and 3 and 5, to the

9  extent we have any documents.  We don't know -- I don't know

10 standing here if we do or do not.  If we do and they have

11 some confidential information, we may have to come back to

12 the Court and ask that those only be produced pursuant to a

13 confidentiality agreement.  I just want to make the Court

14 aware of that.

15           **THE COURT:**  Yeah, although if you've got

16 documents that show the sales of stock by a shareholder and

17 the corporation has them, I have somewhat of a hard time

18 thinking that's going to be terribly confidential, but we'll

19 see.  Come back if you need to.  But let's get the documents

20 to Mr. Paduano.

21           Mr. Paduano, if he thinks he needs a

22 protective order, I want you to go ahead and take the

23 documents, keep them in confidence and then we'll get you

24 all a quick hearing on whether or not they're going to be

25 protected.  The protection, if you all can't agree to it,

1  will be governed by my order but I don't want the documents

2  held up while we're figuring out whether or not there's a

3  protective order.  So if you get them, why don't you go

4  ahead and maintain them in the confidence that he wants and

5  I'll get you a hearing pretty quick as to whether or not you

6  need to maintain that confidence rather than holding up the

7  documents.

8              Does that work for you?

9        **MR. PADUANO:**  I understand, Your Honor.  And,

10  yes, I think it does.

11              **THE COURT:**  Thank you.

12              **MR. COHEN:**  Thank you, Judge.

13              Moving on to the main case now.

14              **THE COURT:**  All right.

15              **MR. COHEN:**  We have ripe today, Bracewell and

16  Guiliani's retention for application.  That is Docket

17  Number 78.

18              **THE COURT:**  All right.

19              **MR. COHEN:**  We have received no objections to

20  this.  We did receive some informal inquiries into the

21  specifics of some entities that we represented in matters

22  unrelated to this case and we've answered those.  I don't

23  believe there's anymore questions or comments.

24              **THE COURT:**  Is that actually set on the Docket or

25  is it just something that's ready to deal with?

1        **MR. COHEN:**  We self-calendared, I believe,

2   Your Honor, and it should be on today's agenda.

3        **THE COURT:**  When you say you self -- I want to

4   just try and get this squared away.  You all filed it at

5   Docket 78 on December 31, so it is now ripe for

6   consideration.

7        **MR. COHEN:**  I think by -- I think on that time we

8   did not self-calendar.  We put it on the agenda for today.

9        **THE COURT:**  Okay.  That's not the way things get

10  on the agenda, so what else you got?

11       **MR. COHEN:**  Well, I think it's going to probably

12  be the same issue then, Your Honor.

13       **THE COURT:**  Okay.

14       **MR. COHEN:**  We have our motion for interim

15  compensation procedures.

16       **THE COURT:**  Okay.  I'll take both those up in

17  Chambers.  I don't think they actually made it to an agenda.

18  If you want them on an agenda, they've got to be calendared

19  for today somehow.

20       **MR. COHEN:**  Okay.

21       **THE COURT:**  And you can calendar them for today

22  by requesting a hearing.  You can calendar them for today by

23  self-calendaring them.  But you can't just put them in a

24  notebook to me where nobody else knows what's going forward

25  today.

1          **MR. COHEN:**  When I say, "On the agenda,"
2   Your Honor, I mean on the Court's website agenda just to be
3   clear.

4          **THE COURT:**  Well, I didn't --

5          **MR. COHEN:**  I didn't just bring them on a piece
6   of paper.

7          **THE COURT:**  Well, what website agenda now?  I
8   just -- I want to get this squared away for the future.

9          **MR. COHEN:**  On the -- on your homepage, there's a
10  link to upload proposed agenda.  I thought that was how we
11  self-calendared for omnibus dates.

12         **MR. RAY:**  Your Honor, Hugh Ray for the Committee.
13  I was not aware of the agenda.  It was not served on me
14  personally and haven't seen a notice filed with the Court.
15  And my understanding of the complex procedures order does
16  not said that that's how we calendar things.  We either
17  calendar them by self-calendaring or by contacting the
18  Court's case manager and obtaining a setting or by open
19  court order.

20         **MR. COHEN:**  I would beg to differ with the Court
21  then.

22         **THE COURT:**  I'm going -- I'm not prepared on
23  those two actually, so I'm not going to take them up, but I
24  want to get this squared away for the future so --

25         **MR. RAY:**  And just -- Your Honor, my

1   understanding of the way a complex procedures order works

2   is: we have a caption that we can self-calendar for dates

3   that have been selected by the Court and they're published

4   on the Court's website.

5              And I thought the agenda was to deal with

6   the orientation of things within the --

7              MR. SPEAKER:  Case?

8              MR. RAY:  -- that are going within the case that

9   are going forward.

10             But be that as it may, I didn't receive an

11  agenda.  And if it's just posted on a Court's website and I

12  don't receive it, then I don't know what's set and I've

13  got --

14             THE COURT:  Yeah, I mean, the agenda that got

15  posted got posted at 11:25 this morning.

16             MR. COHEN:  It was updated at 11:25, Your Honor.

17             THE COURT:  Okay.

18             MR. COHEN:  But that's fine, we're happy if the

19  Court would take that up in Chambers.

20             I'd just like to point out one difference

21  for one of the proposed orders, if I may?

22             THE COURT:  Okay.

23             MR. COHEN:  The proposed order for -- that I was

24  going to present to the Court today for the motion for

25  interim compensation procedure is slightly different from

1  that which has been uploaded.  I've added to the fee parties

2  and I've added counsel for Nasser Kazeminy, Otto Candies,

3  LLC, and certain related entities that are not Debtors.

4  I've added those parties -- those as fee parties.  They get

5  notice, so they will get monthly notice of the monthly fee

6  statements.

7         THE COURT:  Let me get you to upload so that

8  everybody can look at your proposed order.

9         MR. RAY:  Your Honor, I want to say that that's a

10  non-consensual modification.  He was -- I was consulted on

11  the modification.  I've objected to the modification.  I've

12  not agreed to the modification.  The motion was filed.  It

13  had 20-day notice language.  The time to object is filed.

14  Mr. Kazeminy can't just -- when noticed of the motion, he

15  did not file an objection.

16         THE COURT:  Yeah, the Debtors get to try and

17  reach agreements to stop people from filing objections.  I'm

18  not going to get upset about that.

19         MR. RAY:  The Committee is concerned that if it's

20  the --

21         THE COURT:  I'll tell you what, I'm not hearing

22  this today.

23         MR. RAY:  Okay.  Thank you, Your Honor.

24         THE COURT:  That's the main issue.  I'm not going

25  to hear something that I didn't know was set for today.  I

1    don't think it's properly set.

2                    When is your next hearing?

3          **MR. COHEN:**  I don't know, Your Honor.  Thursday,

4    Your Honor.

5          **MR. RAY:**  February 4th is the next one.  There is

6    a -- there's one on the -- there's one coming up but I don't

7    believe anything is set on that day.  The next hearing date

8    is February 4th, and I believe there are two matters

9    scheduled on that day.

10         **THE COURT:**  Okay.  The next hearing is February

11   the 4th.  Let's take up -- we'll go ahead and calendar for

12   February the 4th Docket Number 78 and Docket Number 85.

13   We'll take them up then.  I don't see any real reason to do

14   them without more adequate notice, namely, to me.  So we'll

15   take them up then.

16                    Now, do we need to do anything else?

17         **(No verbal response)**

18                    Okay, thank you.  We'll be in adjournment.

19         **(This proceeding was concluded at 3:36 p.m.)**

20

21

22

23

24

25                         * * * * *

1    *I certify that the foregoing is a correct transcript from*

2    *the electronic sound recording of the proceedings in the*

3    *above-entitled matter.*

4    */s lmartin*

5    _____

6    *JUDICIAL TRANSCRIBERS OF TEXAS, INC.*

7    *JTT JOB/INVOICE # 28080*

8    *DATE:  JANUARY 29, 2010*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25